STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JEROME
MARTIN AND MARVIN MICKENS,
DEFENDANT-APPELLANTS.

Argued January 27, 1981—Decided October 21, 1981.

*Paul M. Klein*, Assistant Deputy Public Defender, argued the cause for appellants (*Stanley C. Van Ness*, Public Defender, attorney).

*Frederick S. Cohen*, Deputy Attorney General, argued the cause for respondent (*John J. Degnan*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

The principal issue presented by this appeal, as in the companion case of *State v. Alston,* 87 *N.J.* 531, also decided today, involves the level of exigent circumstances sufficient to justify a warrantless search of an automobile under the automobile exception to the Warrant Clause, *Carroll v. United States,* 267 *U.S.* 132, 45 *S.Ct.* 280, 69 *L.Ed.* 543 (1925). In *Alston, supra,* the police stopped defendants' vehicle on the open highway for traveling in excess of the legal speed limit and conducted a search at the scene of the stop when it became apparent that the vehicle contained dangerous weapons. In the instant case the police actively sought a certain automobile believed to be an instrumentality used in a freshly-committed armed robbery. The vehicle was promptly discovered unoccupied and parked in a lot near the scene of the crime. With the robbers still at large, the vehicle was seized and removed to the local police station where officers conducted a warrantless search yielding evidence that ultimately led to defendants' convictions for armed robbery. We affirm those convictions and hold that the search of the car was justified as falling within the

automobile exception as applied by the Supreme Court in *Chambers v. Maroney*, 399 *U.S.* 42, 90 *S.Ct.* 1975, 26 *L.Ed.2d* 419 (1970), and by this Court in *State v. LaPorte*, 62 *N.J.* 312 (1973).

I

In the early morning hours of June 3, 1977 two employees and the boyfriend of an employee were closing Friendly's Ice Cream Store in South Plainfield. The store manager had departed at midnight. As one of the store employees was preparing to leave at about 1:25 a. m., he observed a light-colored, woodpaneled Ford LTD station wagon parked next to his car. As he entered his vehicle, he was accosted by a man whom he had seen get out of the station wagon. Brandishing a handgun partially concealed by a cloth, the man shoved the employee in the direction of the store, where they were joined by the assailant's accomplice. The two captors then forced the employee to knock on the store window and pretend to have forgotten something. When the door was opened, the two men forced their way into the store behind the employee. Once inside, the robbers stole $1500 from the store's safe, plus cash, jewelry and personal belongings from the purse of one of the employees. The robbers then locked the three occupants in an anteroom and fled by the back door of the store. After only ten minutes of confinement, the imprisoned escaped and telephoned police.

South Plainfield police officer Joseph Franchak, one of two officers who initially responded to the call, promptly obtained a description of the robbers and of the Ford LTD station wagon. The vehicle apparently had been parked outside the store for several hours before the robbery, as the manager later testified that he had observed the same vehicle parked in the rear of the store when he arrived for work at approximately 10 o'clock that night.

The vehicle's description was relayed to police in neighboring Plainfield, where two officers stopped a station wagon corresponding to the described vehicle. As the station wagon slowed

to a halt, one of its occupants jumped from the car and fled. The officers did not give chase but rather conducted an identification and vehicle credentials check of the two remaining occupants. After completing the credentials check and conducting a brief search of the vehicle that revealed no weapons or contraband, the police allowed the station wagon to go on its way.

Upon conferring with their immediate superior, however, the Plainfield officers were instructed to relocate the station wagon. They found it about twenty minutes later in the parking lot of a housing project only a few blocks from the spot where the initial stop had been made. The store manager of Friendly's and the employee who had been accosted in the store's parking lot, both of whom had seen the station wagon and had described it to the police, were taken to the scene, where both identified the vehicle as the same one that previously had been parked outside the store.

Officer Franchak, one of the original investigating officers from South Plainfield, peered through the rear windows of the station wagon with a flashlight and observed a gallon-can of paint, a paint-stained white glove and some paint-stained clothes. Franchak recalled that one of the robbery victims had told police that when he had been grabbed around the head by one of the robbers, he observed that on the man's hand was a white glove stained with blood or paint. That glove had been found by police just outside the rear door of the store. Believing that the glove in the back of the parked station wagon was the mate of the glove found outside the store, and suspecting that this was the vehicle involved in the robbery, Officer Franchak had the station wagon towed to police headquarters in South Plainfield, where it was searched without a warrant.

The search produced the paint-stained white glove, a gallon can of green paint, and a blue washcloth. One of the store's employees subsequently identified the washcloth as the one the gunman had used to conceal the robbery weapon. A state police chemist confirmed that the paint-stained white gloves were a

pair.   Defendants were arrested, and the fruits of the vehicle search and other identification evidence were instrumental in obtaining their conviction for armed robbery.

The Appellate Division affirmed the convictions.   In an unpublished opinion the court below rejected the contention that the evidence obtained in the warrantless search of the station wagon should have been suppressed at trial, and concluded that the search was justified under the automobile exception.   It held that the police, having had probable cause to search the vehicle at the scene, had the right to remove it to police headquarters and search it there, citing *Chambers v. Maroney*, 399 *U.S.* 42, 90 *S.Ct.* 1975, 26 *L.Ed.2d* 419 (1970), and *Texas v. White*, 423 *U.S.* 67, 96 *S.Ct.* 304, 46 *L.Ed.2d* 209 (1975).

One judge in the Appellate Division dissented on the ground that notwithstanding probable cause to search the vehicle, the decision of this Court in *State v. Ercolano*, 79 *N.J.* 25 (1979), compels the conclusion that in the instant situation the obtaining of a warrant in advance of the search of the station wagon was "readily practicable" and "easily feasible."   See 79 *N.J.* at 46–49.   Therefore, the dissenter concluded that there were no exigent or exceptional circumstances sufficient to justify the warrantless search under *Ercolano*'s analysis of the automobile exception.   Defendants filed a notice of appeal as of right.   *R.* 2:2–1(a).   We affirm.

## II

We note at the outset that, as conceded by defense counsel at oral argument, defendant Mickens did not participate in his co-defendant's pre-trial motion to suppress the fruits of the warrantless search of the automobile.   Rule 3:5–7 plainly requires a motion to suppress to be made before trial and in a timely manner.   Failure to make a timely motion results in a waiver of a defendant's right to object to the evidence's admission at trial.   *R.* 3:5–7(f).   Consequently, defendant Mickens is barred from challenging the legality of the automobile search at

issue in this appeal. See *State v. DiRienzo*, 53 *N.J.* 360, 384 (1969). Our ruling on the merits is directed to the appeal of Martin only.

### III

In general, a warrantless search of a motor vehicle is justifiable under the automobile exception where police have probable cause to believe that the vehicle contains contraband or evidence of criminal activity. See *Texas v. White, supra,* 423 *U.S.* at 68, 96 *S.Ct.* at 305, 46 *L.Ed.2d* at 211 (1975); *Chambers v. Maroney, supra,* 399 *U.S.* at 51, 90 *S.Ct.* at 1981, 26 *L.Ed.2d* at 428; *Carroll v. United States, supra,* 267 *U.S.* at 158–59, 45 *S.Ct.* at 287, 69 *L.Ed.* at 554 (1925); *State v. Welsh,* 84 *N.J.* 346, 352 (1980); *State v. Patino,* 83 *N.J.* 1, 9–10 (1980); *State v. Waltz,* 61 *N.J.* 83, 88 (1972). This exception applies to situations involving parked and unoccupied vehicles encountered by police in public parking lots or on city streets as well as to moving vehicles stopped on the open highway. See *Cardwell v. Lewis,* 417 *U.S.* 583, 594, 41 *L.Ed.2d* 325, 337 (1974); *State v. LaPorte, supra,* 62 *N.J.* at 316–17.

We agree with the determination of the trial court and Appellate Division that the police had sufficient probable cause to conduct a search of the interior of the station wagon. A vehicle markedly similar in color, model and styling had been described by one of the victims as the one used in the robbery. This had been corroborated by the store manager, who identified a vehicle of substantially similar description as having been at the scene of the crime only a few hours earlier. When taken by police to the parking lot where the suspect vehicle was located, the employee first accosted by the robbers stated he was fairly certain that it was the same station wagon from which the gunman had emerged, while the manager had no doubt that he had seen the same vehicle parked behind the store just hours prior to the robbery. Officer Franchak believed that the paint-stained white glove observed in plain view inside the station

wagon matched the glove that had been found just outside the rear door of the store. Another of the victims had told police that one of the robbers wore a light-colored glove stained with blood or paint. When the Plainfield police officers had stopped the station wagon on the street in response to the radio-circulated description of the car involved in the robbery, they observed occupants who fit the general description of the robbers, one of whom fled from the car.[1]

Probable cause has been defined by this Court as a "well grounded suspicion" that a crime has been or is being committed. See *State v. Alston,* 87 *N.J.* 531, 551; *State v. Patino, supra,* 83 *N.J.* at 10; *State v. Waltz, supra,* 61 *N.J.* at 87. Taken together, the facts and circumstances available to police at the time of the seizure in this case provided the officers with a well-grounded suspicion that the station wagon was used in the commission of the armed robbery and that it contained seizable evidence connected with the crime. See *Cardwell v. Lewis, supra,* 417 *U.S.* at 592, 94 *S.Ct.* at 2470, 41 *L.Ed.*2d at 336; *State v. LaPorte, supra,* 62 *N.J.* at 316.

*Chambers* and its progeny firmly establish that when police have probable cause to conduct a warrantless search of an automobile at the spot where the officers encounter the car, they may constitutionally remove the vehicle to police headquarters and there conduct the search without first obtaining a warrant. See *Texas v. White, supra,* 423 *U.S.* at 68, 96 *S.Ct.* at 305, 46 *L.Ed.*2d at 211; *Cardwell v. Lewis, supra,* 417 *U.S.* at 593–94, 94 *S.Ct.* at 2471, 41 *L.Ed.*2d at 336–37; *Chambers v. Maroney, supra,* 399 *U.S.* at 52, 90 *S.Ct.* at 1981, 26 *L.Ed.*2d at 428–29. The probable cause that developed on the scene "still obtain[s] at the station house." *Id.* at 52, 90 *S.Ct.* at 1981, 26 *L.Ed.*2d at 429. In this regard, we find the decision of this Court in *State v. LaPorte, supra,* upholding a warrantless search

---

[1]The station wagon was initially released through an apparent mix-up between officers from the Plainfield and South Plainfield police forces.

of an automobile at a police station under closely analogous circumstances, to be dispositive.

In *LaPorte*, a car fitting the description of one used in an armed robbery was located by police at about 11:30 p. m. unoccupied and parked on a residential street. The robbery suspect was found in a nearby residence and placed under arrest. The parked car was impounded and towed to police headquarters where it was searched without a warrant. The search netted a revolver and other evidence that led to defendant's conviction for armed robbery. In upholding the search in *LaPorte, supra,* Justice Sullivan wrote for the Court:

> The police had the right to seize defendant's automobile since it had been reported as an instrumentality used in the robbery. The search of it was clearly justified since the officers had probable cause to believe that it contained evidence of the * * * armed robbery (as it actually did). *Chambers v. Maroney,* 399 *U.S.* 42, 90 *S.Ct.* 1975, 26 *L.Ed.2d* 419 (1970). * * * Since the police had probable cause to search defendant's automobile, and the circumstances were such that it was not practicable to secure a warrant, their actions in seizing the vehicle, bringing it to police headquarters and searching it there, were not unreasonable. As stated in *Chambers, supra,* 399 *U.S.* at 52, 90 *S.Ct.* at 1981, 26 *L.Ed.2d* at 428, for constitutional purposes there is "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." [62 *N.J.* at 316–17.]

In the instant case, as in *Chambers, supra,* and *LaPorte, supra,* the exigent circumstances make clear that it was reasonable for the officers to remove the vehicle to the police station before conducting the search that, for constitutional purposes, would have been permissible at the scene. The occupants of the car, the suspected robbers, were still at large. Because the police had stopped the car, the occupants were alerted that they might have been suspected of involvement in the armed robbery. They might have returned at any moment to move the car or remove the car's contents. See *State v. Hannah,* 125 *N.J.Super.* 290, 295 (App.Div.1973) ("Probable cause suffices to search an automobile without a warrant because its mobility, *actual or potential,* makes it impracticable to obtain a search warrant before conducting the search." (Emphasis supplied)). In addi-

tion, the officers had reason to believe that the occupants of the station wagon were not only alerted but also armed and dangerous. The illumination in the parking lot where the vehicle was discovered at that early morning hour was dim at best. In view of the possibility of the suspects' return to the car, "[a] careful search at that point was impractical and perhaps not safe for the officers * * *" *Chambers, supra,* 399 *U.S.* at 52 n. 10, 90 *S.Ct.* at 1981 n. 10, 26 *L.Ed.2d* at 428 n. 10.

The level of exigency in the circumstances surrounding this search was heightened by the fact that the police were actively involved in an ongoing investigation shortly after the armed robbery and near to where it had occurred. The officers discovered the vehicle matching the description of the one used by the robbers, near the crime scene and within two hours of the crime. There was an urgent, immediate need for the police to ascertain whether the car contained evidence of the armed robbery, before the suspects had an opportunity to leave the area or to destroy or dispose of other evidence. See *People v. Odom,* 108 *Cal.App.* 3d 100, 108, 166 *Cal.Rptr.* 283, 288 (1980).

Finally, the circumstances that furnished the officers with probable cause were unanticipated and developed spontaneously. See *Chambers, supra,* 399 *U.S.* at 50–51, 90 *S.Ct.* at 1980–81, 26 *L.Ed.2d* at 428. In this respect the present case differs significantly from *State v. Ercolano, supra,* where the Court's suggestion that it was "readily practicable" to obtain a warrant before conducting the search of defendant's automobile was based largely upon facts indicating that the police knew well in advance that defendant would be driving to a staked-out apartment in a car that contained evidence of criminal activity. See *State v. Alston, supra,* 87 *N.J.* at 553–554. Nothing in *Ercolano* should be read to indicate that this Court has departed from the *Carroll* and *Chambers* analysis in situations where police make an unanticipated discovery of a readily movable automobile that they have probable cause to believe contains evidence of a crime. In light of the emergent circumstances presented in this case, it was not necessary for the police to

obtain a warrant before conducting the search of the station wagon.

Accordingly, we reject defendant Martin's challenge to the prosecutorial use of evidence obtained in the search of the car. The judgment below is:

Affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.