2 A.3d 447 (2010)
415 N.J. Super. 475
STATE of New Jersey, Plaintiff-Respondent,
v.
Alnesha MINITEE, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Darnell Bland, Defendant-Appellant.
Nos. A-5002-06T4, A-6213-06T4
Superior Court of New Jersey, Appellate Division.
Submitted January 12, 2010.
Decided August 16, 2010.
*448 Yvonne Smith Segars, Public Defender, attorney for appellant Alnesha Minitee in A-5002-06 (Michael Confusione, Designated Counsel, on the brief).
Yvonne Smith Segars, Public Defender, attorney for appellant Darnell Bland in A-6213-06 (Stephen W. Kirsch, Assistant *449 Deputy Public Defender, of counsel and on the brief).
Bruce J. Kaplan, Middlesex County Prosecutor, attorney for respondent in A-5002-06 (Joie Piderit, Assistant Prosecutor, of counsel and on the brief).
Anne Milgram, Attorney General, attorney for respondent in A-6213-06 (Steven A. Yomtov, Deputy Attorney General, of counsel and on the brief).
Before Judges FUENTES, GILROY and SIMONELLI.
The opinion of the court was delivered by
FUENTES, J.A.D.
In these back-to-back appeals, defendants Alnesha Minitee and Darnell Bland challenge the warrantless search of a motor vehicle that served as the alleged getaway car in a series of armed robberies of massage parlors. Defendants, Almustafa Baldwin and Liakesha Jones[1] were charged with committing these robberies during a one-month crime spree that stretched across four counties. Bland pled guilty and makes no other challenges to his conviction. Minitee was tried before a jury and convicted of five counts of first degree armed robbery in Middlesex County. N.J.S.A. 2C:15-1. In addition to the warrantless search of the car, Minitee also raises other grounds for reversing her conviction and sentence.
Because the warrantless search of the motor vehicle was constitutionally impermissible, we now consolidate these appeals and reverse both defendants' convictions. As a threshold issue, we hold that under N.J. Const. Art. I, ¶ 7, Bland has standing to challenge the propriety of the search because he had a "participatory interest" in the vehicle where the items seized by police were found. In so doing, we find State v. Bruns, 172 N.J. 40, 796 A.2d 226 (2002), distinguishable from the facts presented in this case. Applying the principles articulated by the Court in State v. Pena-Flores, 198 N.J. 6, 965 A.2d 114 (2009), we reverse the trial court's order upholding the propriety of the warrantless search of the motor vehicle, vacate defendants' convictions, and remand.
The following facts will inform our discussion of these legal issues.

I
Defendants both moved to suppress evidence seized by the police during a warrantless search of the red SUV they had allegedly used to perpetrate the robberies. We thus derive our factual recitation from the evidence presented at the suppression hearing. During that hearing, the State called three witnesses, all of whom were employed by the Fort Lee Police Department.
On January 24, 2003, at about 10:30 p.m., Police Officer Alejandro Lorenzo was on his meal break at Baggio's Restaurant when a call came over the police radio that an armed robbery was in progress at the KOA Spa, an establishment located around the corner from Baggio's. When Lorenzo arrived, he was the first officer on the scene.
Lorenzo saw a crowd of people outside. As he stepped out of his car, bouncers from the adjacent Tribeca night club pointed to an SUV that was stopped at a traffic light and screamed that the occupants of the SUV had guns and had "just robbed the place." As Lorenzo turned around to face the traffic signal, he "saw a red SUV stopped at the light trying to squeeze by some other cars." He ran *450 towards the SUV, "took cover behind the building, removed [his] service weapon, took aim, and ordered the occupants out of the vehicle" using what he characterized as "strong words."
He repeated these verbal commands approximately five times over a thirty-second period before a man, subsequently identified as Bland, emerged from the rear, passenger-side door of the SUV, with a purse and a handgun in his hand. Lorenzo ordered Bland to drop the gun; he complied. Lorenzo instructed Bland to step onto the sidewalk and kneel down; Bland took one step towards the sidewalk, then ran eastbound on Main Street.
Turning his attention to the vehicle, Lorenzo noticed that the SUV was still moving or "jerk[ing] as if was still in gear." The SUV remained in place, however, because the traffic light was still red. Lorenzo ordered the remaining occupants, two of whom he could see, to step out of the SUV. At this point, the traffic light turned green causing the cars in front of the SUV to move; this permitted the SUV to drive "partially onto the sidewalk and continue[] west on Main Street." Lorenzo chased the vehicle on foot until he saw it turn left onto Gerome Avenue. He then radioed this information to the other police units.
Officer Michael Gerardo first saw the red SUV on Gerome Avenue; he then followed it to the dead end of Beverly Hills Road. When he came upon the vehicle, Minitee and Jones were standing by the driver's side of the car. They claimed that they were the victims of a carjacking. The two then followed Gerardo's instructions to lay down on the ground. Backup officers arrived a short time later. No weapons were found on the women. Jones was arrested at the scene based on an unrelated outstanding warrant. Minitee was subsequently arrested at the police station during questioning.
A police search of Motor Vehicle Commission records determined that Minitee was the registered owner of the red SUV. The vehicle was taken into custody by the Fort Lee Police Department and towed to its headquarters that same night, January 24, 2003.
The police conducted a warrantless search of the SUV and recovered the following items, which were admitted into evidence during Minitee's trial: (1) classified-section pages of different editions of the Newark Star-Ledger newspaper listing area massage parlors, with certain establishments bearing an asterisk mark next to them and others marked with a "no"; (2) several rolls of duct tape; (3) a videotape depicting the robbery at an East Brunswick massage parlor that had taken place just a week earlier; (4) a piece of paper with handwritten directions on it; (5) a newspaper dated January 8, 2003, with certain highlighted entries in the classified section, including Ace Full Body Massage Parlor; and (6) an ad page from the Star-Ledger with an asterisk mark next to KOA Spa's ad.
Baldwin was arrested on foot by Port Authority Police in Englewood Cliffs approximately forty minutes after the initial police radio broadcast about the armed robbery. Bland, who had been the first to exit the SUV, was arrested months later after one of the victims of the robbery identified him from a police photograph array.
After hearing the arguments of counsel, the trial court denied defendants' motions to suppress this evidence. The motion judge gave the following explanation in support of his ruling:
I'm satisfied that the testimony demonstrates that the State has met its burden of proof by a preponderance of the evidence; *451 that no Fourth Amendment violation has taken place by reason of the warrantless search of the red SUV on that date as well as the search [that] I find to have been incident to probable cause to arrest both females who were the occupants of the vehicle. The proofs presented establish that the Fort Lee police believing that an armed robbery had just taken place at the KOA Spa and that the individuals involved in it were fleeing from the scene in an SUV and that evidence of the crime could reasonably be expected to be found in that vehicle and while in pursuit of the vehicle an armed individual exits the vehicle ... with a weapon and discards it. Against this backdrop of events, the police were justified [in] searching the vehicle and its occupants.
....
The risks to public safety require and the need to locate the potentially armed and potentially dangerous suspects provided the exigency [for] the warrantless search of the motor vehicle.
....
I'm satisfied based upon the testimony in this case, the totality of the circumstances demonstrated that the police acting under this fast backdrop of moving events acted objectively and reasonably under the totality of the circumstances and that the search of the vehicle as well as the search of the individuals and ... the search of those vehicles was supported by probable cause. Therefore, the motions to suppress are denied.

II
Defendant Minitee raises the following arguments in her appeal:
POINT I
PERMITTING THE JURY TO HEAR SO MUCH TESTIMONY ABOUT THE OTHER ROBBERIES THAT DEFENDANT ALLEGEDLY COMMITTED VIOLATED EVIDENCE RULE 404(b) AND DEPRIVED DEFENDANT OF HER RIGHT TO A FAIR TRIAL ON THE MIDDLESEX COUNTY CHARGES THAT WERE ACTUALLY AT ISSUE BELOW.
POINT II
THE JURY CHARGES WERE DEFICIENT AND PREJUDICED DEFENDANT (plain error).
POINT III
THE PROSECUTOR'S SUMMATION DEPRIVED DEFENDANT OF A FAIR TRIAL BECAUSE IT MISCHARACTERIZED THE ACCOMPLICE LIABILITY PRINCIPLES ON WHICH THE STATE BASED ITS CASE AGAINST DEFENDANT (plain error).
POINT IV
THE WARRANTLESS SEARCH OF THE EXPLORER DID NOT FALL WITHIN THE SEARCH INCIDENT TO ARREST OR AUTOMOBILE EXCEPTIONS TO THE WARRANT REQUIREMENT AND WAS THEREFORE UNCONSTITUTIONAL.
POINT V
DEFENDANT'S SENTENCE IS EXCESSIVE.
Defendant Bland raises the following argument:
POINT I
THE WARRANTLESS SEARCH OF THE VEHICLE IN WHICH DEFENDANT HAD BEEN A PASSENGER WAS CONDUCTED IN VIOLATION OF THE STATE CONSTITUTION BECAUSE, BY THE TIME THAT SEARCH TOOK PLACE, ANY REASONABLE NOTION OF "EXIGENCY" HAD LONG *452 SINCE PASSED, AND THERE WAS PLENTY OF TIME TO GET A WARRANT, TELEPHONIC OR OTHERWISE.
Under the circumstances presented here, the warrantless search of the SUV was unconstitutional. We thus reverse the trial court's order denying defendants' motions to suppress. Because our decision vacates the convictions, we will not address the remaining arguments raised by Minitee.
As a threshold issue, the State argues that Bland does not have standing to challenge the propriety of the search. Before we address the merits of this argument, we note that the State did not raise this issue before the trial court. This issue may not therefore be properly before us. See State v. Arthur, 184 N.J. 307, 327, 877 A.2d 1183 (2005) (recognizing that an appellate court ordinarily will not consider issues that were not raised at trial).
Anticipating this problem, the State cites State v. Alston, 88 N.J. 211, 218-19, 440 A.2d 1311 (1981), and State v. De La Paz, 337 N.J.Super. 181, 191, 766 A.2d 820 (App.Div.), certif. denied, 168 N.J. 295, 773 A.2d 1158 (2001), in support of the proposition that reviewing courts have not "hesitated" to consider standing issues even if the issue was not considered by the trial court. We find little support in Alston or De La Paz for the kind of blanket policy advocated by the State here.
In the seminal case of State v. Alston, the Attorney General, as amicus curiae, urged the Court to consider the question of defendant's standing to challenge the search, notwithstanding that the issue had not been raised by the parties at the trial or appellate court level. Alston, supra, 88 N.J. at 218-19, 440 A.2d 1311. Writing for the majority, Justice Clifford recognized that there was "some debate over whether the issue is properly before this Court." Ibid. Although it ultimately acceded to the Attorney General's request, the Court emphasized that the issue of the defendant's standing raised "important questions in the administration of criminal justice in this state. Therefore, we address this troublesome issue of Fourth Amendment Jurisprudence." Ibid.
In De La Paz, we reviewed the issue of the defendant's standing in the context of a motion to suppress because both "the motion judge and the parties mistakenly assumed defendant's coextensive `standing' to challenge the officers' actions on both state and federal constitutional grounds." 337 N.J.Super. at 191, 766 A.2d 820. Writing for the panel, Judge Carchman then proceeded to address and correct this mistaken collective assumption.
Unlike Alston, the issue of standing raised by Bland does not present "important questions in the administration of criminal justice in this state." In contrast to De La Paz, the issue of Bland's standing was not the product of a common mistake by the parties and the trial court. In short, from this record, we discern no reason that justifies the State's failure to raise this threshold question in a timely fashion before the trial court. We will nevertheless address it because we are satisfied that Bland has the requisite "participatory" interest in the motor vehicle and the property seized to confer him with the standing necessary to challenge the State's warrantless search.
Under our state constitution, "a criminal defendant has standing to move to suppress evidence from a claimed unreasonable search or seizure `if he has a proprietary, possessory or participatory interest in either the place searched or the property seized.'" State v. Johnson, 193 N.J. 528, 541, 940 A.2d 1185 (2008) (quoting Alston, supra, 88 N.J. at 228, 440 A.2d 1311). In State v. Mollica, 114 N.J. 329, *453 339-40, 554 A.2d 1315 (1989), the Court recognized the defendant's "participatory interest" in property that was not owned by the defendant. Armed with a search warrant, the police searched the defendant's hotel room. Id. at 334, 554 A.2d 1315. The search warrant was based on information obtained from a codefendant's telephone records documenting illegal gambling activities. Ibid. Because these records were generated by the defendant's criminal gambling activities, the Court held that the defendant had standing to challenge how they were seized. Id. at 335, 554 A.2d 1315.
Here, Bland's participatory interest in the red SUV registered to Minitee stems from his occupancy of the vehicle at the time Officer Lorenzo first stopped it. His occupancy gave him dominion and use of the area in and around the vehicle where the police subsequently found the incriminatory evidence. This participatory interest continued, unabated, to that point in time when the police seized the vehicle and arrested Minitee and her codefendant.
Relying on Bruns, supra, 172 N.J. 40, 796 A.2d 226, the State argues that Bland cannot show that he has a participatory interest in the vehicle because "there is no evidence in the record that [he] was even an occupant of the SUV prior to its seizure." The State is mistaken. As noted, the record shows that Bland was an occupant of the SUV at the time Lorenzo ordered him to exit the vehicle. By Officer Gerardo's own account, he came upon Minitee and Jones next to the SUV just minutes after Lorenzo reported his encounter with Bland over the police radio and described the vehicle's make, model, and direction.
These facts are in sharp contrast to the salient facts in Bruns. As the Court emphasized in Bruns, the defendant did not have a proprietary or possessory interest in the vehicle that was searched. Bruns, supra, 172 N.J. at 56, 796 A.2d 226. The defendant in Bruns argued that he had a "participatory interest in the weapons seized because they were used to commit the robbery for which he was charged." Id. at 57, 796 A.2d 226. In rejecting the defendant's argument, the Court noted that Bruns "was not a passenger in the vehicle and he was not in the vicinity of the vehicle at the time it was searched." Ibid. With these key facts in mind, the Court held that a "generalized connection" to the evidence seized is not enough to confer standing based on a participatory interest. Id. at 57-58, 796 A.2d 226. According to Bruns, to confer standing based on a participatory interest there "must be at a minimum some contemporary connection between the defendant and the place searched or the items seized." Id. at 58, 796 A.2d 226.
Applying these principles to the facts in this case, we are satisfied that Bland has standing to challenge the propriety of the vehicle's warrantless search. His occupancy of the SUV just minutes before the police seized it conferred upon him the constitutionally required participatory interest to challenge the search of that vehicle.

III
We turn next to the propriety of the warrantless search of the SUV. After he came upon Minitee and Jones, Detective Ginsburg looked inside the SUV and saw two rolls of duct tape on the rear passenger seat and on the back seat floorboard. Because he believed that the victims of other robberies had been "duct-taped," Ginsburg concluded that he had probable cause to seize the vehicle and arrest the two women based on this evidence. From this point, whatever exigent circumstances may have existed with respect *454 to the SUV dissipated. The vehicle was in police custody and there was no danger that the evidence would be lost, compromised, or destroyed.
In Pena-Flores, supra, 198 N.J. at 23-24, 965 A.2d 114, the Court reaffirmed the basic justification for conducting a warrantless search of an automobile. First, the justification "does not turn on whether the vehicle is parked or moving." Id. at 23, 965 A.2d 114.
Rather, the dispositive question is whether the circumstances ... make it impracticable to obtain a warrant when the police have probable cause to search the car. Accordingly, when, without advance planning, police encounter a parked car, have probable cause to believe that the vehicle contains criminal contraband ... and have articulable reasons to believe that the evidence may otherwise be lost or destroyed, they may seize and search the vehicle for the contraband without the necessity of a warrant.
[Id. at 23-24, 965 A.2d 114 (internal citations and quotations omitted).]
The Pena-Flores Court thus established three basic requirements to uphold the warrantless search of a motor vehicle: (1) the stop must be unexpected; (2) the police must have probable cause to believe that the vehicle contains contraband or evidence of a crime; and (3) there must exist exigent circumstances under which it is impracticable to obtain a warrant. Id. at 28, 965 A.2d 114. As to the exigency requirement, the Court emphasized that it "encompasses far broader considerations than the mere mobility of the vehicle." Ibid.
Applying these principles here, we hold that the police clearly had sufficient time to seek a warrant before searching the SUV the day after seizing it. After the car was taken into custody, there was no justification to search it without a warrant. Once the vehicle was removed from the scene, impounded, and taken to the Fort Lee police station, the State had sufficient time to obtain either a telephonic warrant or a traditional one. The warrantless search of the vehicle once it was in the custody of the State was clearly unjustified and unconstitutional. State v. Slockbower, 79 N.J. 1, 12, 397 A.2d 1050 (1979).
In the interest of completeness, we also address State v. Martin, 87 N.J. 561, 436 A.2d 96 (1981), a case decided by the Court on the same day that Alston was decided. Martin concerned the warrantless search of a station wagon that was used as a getaway car after the robbery of a Friendly's Ice Cream Store. Id. at 564-65, 436 A.2d 96. The police first stopped the car and its occupants based on a description obtained from the victims of the robbery. Ibid. At this stop, the driver produced valid identification and vehicle credentials and the officers permitted the occupants to go on their way. Ibid.
Thereafter, "[u]pon conferring with their immediate superior," the officers involved in the initial stop were directed to locate the car. Id. at 565, 436 A.2d 96. Approximately twenty minutes later, the officers found the station wagon parked in the parking lot of a housing complex located a short distance from the initial motor vehicle stop. Ibid. Looking through the windows of the car, the officers were able to identify a glove that may have been used by one of the robbers. Two victims of the robbery, whom the police brought to the car's location, also definitively identified the station wagon as the getaway car. Ibid. Based on this information, the police towed the vehicle to its headquarters, where it was searched without a warrant. Ibid.
*455 In upholding the constitutionality of this warrantless search, the Court emphasized the following facts:
In the instant case, ... the exigent circumstances make clear that it was reasonable for the officers to remove the vehicle to the police station before conducting the search that, for constitutional purposes, would have been permissible at the scene. The occupants of the car, the suspected robbers, were still at large. Because the police had stopped the car, the occupants were alerted that they might have been suspected of involvement in the armed robbery. They might have returned at any moment to move the car or remove the car's contents. In addition, the officers had reason to believe that the occupants of the station wagon were not only alerted but also armed and dangerous. The illumination in the parking lot where the vehicle was discovered at that early morning hour was dim at best. In view of the possibility of the suspects' return to the car, a careful search at that point was impractical and perhaps not safe for the officers.
The level of exigency in the circumstances surrounding this search was heightened by the fact that the police were actively involved in an ongoing investigation shortly after the armed robbery and near to where it had occurred... There was an urgent, immediate need for the police to ascertain whether the car contained evidence of the armed robbery, before the suspects had an opportunity to leave the area or to destroy or dispose of other evidence.
Finally, the circumstances that furnished the officers with probable cause were unanticipated and developed spontaneously.
[Martin, supra, 87 N.J. at 569-70, 436 A.2d 96 (internal quotations and citations omitted).]
This analysis appears to fit squarely with the facts we are confronted with here. As previously noted, the police were involved in an active criminal investigation of the armed robbery of the massage parlor when Officer Gerardo came upon Minitee and Jones standing outside of the red SUV. Although the women claimed to be the victims of a carjacking, the police rejected this assertion and took both suspects into custody for further questioning. From a cursory visual inspection of the vehicle's interior, the officers at the scene were only able to see rolls of duct tape that may have been used in this, and other, massage parlor robberies. As in Martin, Bland had not been apprehended, was possibly armed and dangerous, and was certainly aware that the police were looking for the SUV. He could also have been alerted of the vehicle's location by Minitee and Jones before Gerardo arrived at the scene. Bland was therefore capable of returning to the SUV and removing or destroying the evidence contained therein or confronting any officers left to guard it while a search warrant was procured.
As the Court found in Martin, under these circumstances, it would have been impractical and even dangerous for the police to have conducted an extensive search of the SUV at the scene. Thus, under Martin, it can be plausibly argued that the exigent circumstances present here authorized the removal of the SUV and its subsequent warrantless search at the Fort Lee police station. That being said, we cannot reconcile this approach with the Court's clear mandate in Pena-Flores, that "`for purposes of a warrantless search, exigent circumstances are present when law enforcement officers do not have sufficient time to obtain any form of warrant.'" Pena-Flores, supra, 198 N.J. at 30, 965 A.2d 114 (quoting State v. Johnson, 193 N.J. 528, 556 n. 7, 940 A.2d 1185 (2008)).
*456 Applying this mandate to these facts, the exigency that existed at the scene dissipated once the SUV was removed and placed in the custody of the Fort Lee Police Department. Thereafter, the police clearly had sufficient time to obtain, at a minimum, a telephonic warrant before searching the vehicle. Stated differently, the exigent circumstances that permitted the police to seize the SUV from the scene do not justify its subsequent warrantless search at the Fort Lee police station.
We harmonize the seemingly inconsistent holdings in Martin and Pena-Flores by finding that the exigent circumstances that existed at the scene only permitted the police to seize the vehicle and transport it to a secure location. Thereafter, the police were constitutionally required to obtain a warrant before searching the vehicle. This approach distinguishes between, and guards against, unreasonable searches and unreasonable seizures, the two fundamental protections embodied in Article I, Paragraph 7 of our State Constitution.
We consider the United States Supreme Court's decision in Chambers v. Maroney, 399 U.S. 42, 51-52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970), permitting warrantless searches of vehicles impounded by the police, to constitute binding authority only under the Fourth Amendment of the United States Constitution. Under Article I, Paragraph 7 of our State's Constitution, as interpreted by the Court in Pena-Flores, however, the police must, where practicable, obtain a warrant before searching a vehicle that has been seized and impounded under the exigent circumstances exception to the warrant requirement.
Justice Albin, in his dissent in Pena-Flores, anticipated the approach we adopt here as one of the consequences of the majority's opinion.
Under the standard adopted by the majority, police officerswho lawfully stop a motor vehicle on a highway and have probable cause to believe that there is evidence of a crime inside the vehicle will have to secure a search warrant before conducting a search ... [c]aution will lead officers to impound more cars while they apply for warrants[.]
[Pena-Flores, supra, 198 N.J. at 37, 965 A.2d 114 (Albin, J., dissenting).]
Therefore, we are satisfied that, under Pena-Flores, our State's Constitution provides greater protection for New Jersey citizens than those afforded under the Fourth Amendment.
Consequently, we reverse the trial court's order and suppress the evidence seized from the SUV by police, vacate the convictions of defendants Bland and Minitee, and remand for such further proceedings as may be warranted.
NOTES
[1] These individuals are not a part of this appeal.