NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2084-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAKIL J. BRYANT,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION
AS REDACTED**

**June 5, 2025**

**APPELLATE DIVISION**

Argued May 19, 2025 – Decided June 5, 2025

Before Judges Sabatino, Jacobs, and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 22-05-429, 22-05-430, and 22-08-769.

Margaret McLane, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Margaret McLane, of counsel and on the briefs).

Deborah Bartolomey, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Deborah Bartolomey, of counsel and on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

Defendant Jakil Bryant appeals his judgment of conviction for weapons possession and other offenses. His appeal primarily focuses on the trial court's denial of his motion to suppress evidence of a firearm. The police recovered the firearm through a warrantless search of a companion's backpack, which she had carried out of a parked car before encountering the officers on the street.

For the reasons that follow, we reverse. Among other things, we hold that: (1) defendant had standing to challenge the search; (2) the automobile exception to the warrant requirement did not apply to the backpack search; and (3) the State did not prove exigent circumstances to justify the immediate opening of the backpack secured in the police vehicle.

I.

The record reveals the following facts pertinent to our review.

Officer Sams' Testimony

Police Officer Roland Sams of Highland Park was the sole witness to testify at the suppression hearing. The trial court found his testimony to be credible.

On February 23, 2022, he and his partner, Officer Garrity,[1] were working the night shift, from 6:00 p.m. to 6:00 a.m. They were in separate cars but communicating over the radio. Both officers were wearing body cameras, and videos from both cameras were introduced into evidence and played at the hearing.[2]

Around 4:30 a.m., Garrity called over the radio to Sams to report that he saw a white Toyota Camry that was the subject of a Be-On-The-Lookout police advisory ("BOLO"). The BOLO reported a recent shooting in the area in which defendant was the suspect. In that incident, defendant allegedly pointed a gun at his brother's partner and fired it inside the brother's home. Sams testified that the BOLO contained photos of defendant and the white Toyota, including its distinctive license plate frame. Sams testified there was no arrest warrant for defendant.[3]

---

[1] The record supplied to us does not indicate Officer Garrity's first name.

[2] We have reviewed the videos, the official transcript of the audio track played in court at the suppression hearing, and Exhibit S-3, an unofficial transcript of Officer Sams' body camera video prepared for the prosecutor's office that was presented to the court during the motion hearing.

[3] The motion court found that defendant had "an active warrant for his arrest following two separate violent incidents with a firearm." We are unsure of the

A-2084-23

After Garrity told Sams about seeing the Toyota, Sams drove his squad car over to Magnolia Street in Highland Park where the car was parked. Garrity had parked his squad car in front of the Toyota while Sams parked behind it.

According to Sams, Garrity observed two people asleep inside the parked Toyota—a man in the driver's seat and a woman in the passenger's seat. Sams testified that, at that time, the officers were not certain of the man's identity.

Sams testified that he had no idea who the woman was and had no idea about her relationship to the man in the car. He stated he did not have an arrest warrant for the passenger, nor was there any BOLO for her.

Sams recounted that the Toyota was lawfully parked and they had not seen it commit any motor vehicle infractions. The officers decided to distance themselves from the parked car and call for mutual aid from nearby towns.

After about ten minutes, the female passenger[4] got out of the car carrying a backpack. A few seconds later, the driver also got out of the car. According to Sams' testimony, he and Garrity identified themselves as police officers and

source of the court's information. In any event, the discrepancy is immaterial to our legal analysis.

[4] We have been advised that the female passenger has obtained an expungement of the criminal charges that were brought against her. Her initials are not consistent in the record. Consequently, we shall refer to her primarily as "the former passenger" to protect her identity.

A-2084-23

told the man to stop but he fled the scene, running between nearby houses and out of sight. They did not chase after him. However, police did detain the man later that morning, identifying him as defendant.

As reflected in the body camera footage, Officer Garrity, shining his flashlight and pointing his gun at the former passenger, immediately ordered her to "put your hands up." She responded, "I live here." Garrity did not permit her to go to the residence. After Sams went over to assist Garrity, with his firearm drawn, Garrity told Sams "to put her in cuffs." The former passenger put down her backpack so she could put her hands behind her back. She then dropped her phone and keys when ordered by Sams.

Sams frisked the former passenger for weapons and then handcuffed her and placed her in the back of Garrity's squad car. As depicted in the video (and not shown to the contrary), the squad car has what appears to be a plexiglass barrier between the front and back seats.

When asked on direct examination why they handcuffed the former passenger and locked her inside the police car, Sams testified that "[a]t the time she was being detained just because she was in the vehicle." He also noted that at that time, the plan was for the officers to take the former passenger back to police headquarters to question her about the suspect. Sams further testified that

5

he was concerned because he could hear "tree branches snapping and things like that," which he believed could have been the man who fled circling back to the scene.

Sams then retrieved the former passenger's belongings and placed them in the front seat of the squad car. Sams contended that, at this point, he had no intention of searching the former passenger's backpack.

As shown in the body camera footage and confirmed by Sams' testimony, after Sams put the former passenger's seized items into the front seat of the police car, she spontaneously exclaimed to him that "[t]here's something in [her] bag." Sams repeatedly asked her what was in her bag. The former passenger initially responded that she was "not sure what's in it" and then clarified that it was "a weapon."

Sams notified Garrity of what the former passenger said. The officers elected to proceed with a search of the backpack. Upon opening it, Sams immediately found a firearm inside.

The suppression hearing transcript from when the bodycam video was played for the court explains the interaction as follows:

FEMALE: There's something in my backpack.

6

OFFICER SAMS:  Something like what? . . . What's in it? . . . What's in your bag? . . . Ma'am, I need to know what's in your bag right now.

FEMALE:  I'm not sure what's in it.

   . . . .

OFFICER SAMS:  Something . . . like what?

FEMALE:  — [5]

OFFICER SAMS:  Okay.  Garrity, she possibly has a weapon in her bag.

   . . . .

OFFICER SAMS:  She just told me she has a weapon in her bag.  She thin[k]s he ditched the gun in her bag.

When asked why the police immediately searched the backpack rather than first obtain a search warrant, Sams testified that "knowing there was a BOLO for the suspect possibly having a weapon, we wanted to search it right there . . . for the safety of all of us before transporting her back."  Sams answered affirmatively when asked if he had "any concern about driving [the police] vehicle with an unknown weapon in the car to go to the police station."  Sams

---

[5]  The unofficial bodycam video transcript (Exhibit S-3) further substantiates the interaction, explicitly noting the former passenger stated the item was "a weapon."

A-2084-23

also answered affirmatively when asked if he had to immediately search the bag after being told there was a weapon in it because "it could explode" and "as far as you know, it could have been a bomb."[6]

About five minutes after Bryant and the former passenger exited the vehicle, backup officers from a neighboring municipality arrived, so Sams secured Garrity's police vehicle and debriefed the other officers. The officers then spent approximately thirty minutes searching for Bryant before Garrity returned to his squad car and transported the former passenger back to the police station. Sams testified that the police did not search Bryant's car but instead had it impounded and brought to police headquarters.

After considering the evidence, the trial court denied the motion to suppress, explaining its reasons in an oral opinion. In essence, the court concluded the warrantless search was justified under (1) the automobile exception and (2) the doctrine of exigent circumstances, as argued by the prosecutor. The court stressed the officer safety concerns posed at the scene given the weapon noted in the BOLO, the lack of immediate backup assistance,

---

[6] No bomb squad was called to the scene. We also note the former passenger's use of the term "weapon" would be an unusual way to refer to a bomb, and the BOLO solely referenced a shooting incident. Moreover, the manner in which the backpack was handled by the police on the video was not consistent with a reasonable belief that it contained a bomb.

and the possibility that defendant was on the loose and could return to the scene while armed. The court found that the police encounter of the Toyota and its occupants was spontaneous and unforeseeable.

Following the suppression ruling, plea negotiations ensued. Through a plea agreement with the State, defendant pled guilty to "certain persons" not to be in possession of a firearm, N.J.S.A. 2C:39-7(b)(1); possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and criminal mischief, N.J.S.A. 2C:17-3(a)(1). Pursuant to Rule 3:5-7(d), defendant preserved his right to appeal the suppression denial.

Consistent with the State's recommendation in the plea agreement, the court sentenced defendant to an aggregate custodial term of eight years with a five-year parole disqualifier.

This appeal ensued. Defendant raises the following points for our consideration:

> POINT I
>
> THE POLICE ILLEGALLY ARRESTED THE PASSENGER WITHOUT PROBABLE CAUSE SHE HAD COMMITTED ANY CRIME AND ILLEGALLY SEARCHED HER BAG WITHOUT ANY VALID EXCEPTION TO THE WARRANT REQUIREMENT.
>
> A. The Police Illegally Arrested The Passenger When They Pointed Their Guns At Her, Ordered

Her To Put Her Hands Up, Handcuffed Her, And Locked Her Inside A Police Car.

B. The Passenger's Statement Must Be Suppressed As A Fruit Of Her Illegal Arrest.

C. The Warrantless Search Of The Backpack Was Illegal.

POINT II

DEFENDANT'S SENTENCE IS EXCESSIVE AND SHOULD BE REMANDED FOR RESENTENCING.

II.

A.

We examine these issues, recognizing our scope of review of the court's credibility findings is deferential, see State v. Nyema, 249 N.J. 509, 526 (2022), but our review of legal conclusions is de novo. State v. S.S., 229 N.J. 360, 380 (2017). As a threshold matter, we address the State's contention that defendant lacks standing to argue that the police unconstitutionally searched the former passenger's backpack. We readily dispel that contention, under the broad principles of "automatic standing" that are well settled under New Jersey law.

"[O]ur courts have construed the New Jersey Constitution as affording New Jersey citizens greater protection against unreasonable searches and seizures than accorded under the United States Constitution." State v. Lamb,

218 N.J. 300, 313-14 (2014). Specifically, under our state constitution, "a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure[7] if he has <u>a proprietary, possessory or participatory interest in</u> either the place searched or <u>the property seized</u>" <u>or</u> if "possession of the seized evidence at the time of the contested search is <u>an essential element of guilt</u>." State v. Alston, 88 N.J. 211, 228 (1981) (emphasis added).[8]

Both of those alternative grounds for defendant's standing to contest the warrantless backpack search pertain here. Defendant plainly had "a proprietary, possessory or participatory interest" in the contents of the seized backpack. The record reflects the former passenger told the police that defendant placed a weapon into her backpack. By that conduct, it can be reasonably inferred that

---

[7] Defendant correctly acknowledges that he does not have standing to argue that the former passenger's Fifth Amendment and state law rights against self-incrimination were infringed in her interactions with the officers. State v. Baum, 199 N.J. 407, 412 (2009).

[8] See, e.g., State v. Hagans, 233 N.J. 30, 38 (2018) (finding the "[d]efendant ha[d] automatic standing to challenge the [warrantless] automobile search [where he was a passenger] because the marijuana and gun recovered as a result of the search constitute essential elements of the crime with which he was charged"); Lamb, 217 N.J. at 314, 319 (finding that the defendant had automatic standing to challenge the consent to search given by another person since he had a possessory interest in the seized handgun).

he had been in possession of the weapon. It also can be reasonably inferred that he anticipated the ability to regain physical control of the weapon at a later time from his companion. In addition, the indictment charges defendant with numerous weapons possession offenses. Those charged possessory offenses inherently hinge upon proving defendant's possession of the firearm as "an essential element."

The State contends defendant's standing with respect to the gun is too attenuated, and that he abandoned the gun once he placed it in his companion's backpack and then fled from the scene. We reject that hypothesis.

The Supreme Court's opinion in State v. Shaw, 237 N.J. 588 (2019), is instructive on this point. In Shaw, the Court held that a defendant charged with the illegal possession of drugs had automatic standing to challenge the warrantless seizure of drugs that the police seized from a tote bag of a fellow passenger within the vehicle. Id. at 616-18. The Court reasoned that although the tote bag belonged to the other passenger, the defendant had not abandoned his interest in the drugs contained within it. Id. at 617. Nor was he proven to be a trespasser with respect to the drugs. Ibid.

Here, as in Shaw, there was no evidence that defendant placed the contraband in the passenger's bag without her knowledge. In fact, the former

passenger in this case exhibited that knowledge in her statement to Officer Sams. We also do not regard defendant's flight from the police as conclusive proof that he was abandoning the firearm. Had the police not seized the backpack and instead allowed the former passenger to take it home with her, defendant may well have subsequently met with her and reacquired the gun.

B.

As noted above, the State relies on only two exceptions to the warrant requirement here: (1) the automobile exception; and (2) the doctrine of exigent circumstances.[9] We discuss those exceptions in turn.

1.

The automobile exception to the warrant requirement has been developed by the United States Supreme Court and the New Jersey Supreme Court largely in recognition of the inherent mobility of a motor vehicle. Carroll v. United States, 267 U.S. 132, 153 (1925); State v. Cohen, 254 N.J. 308, 320 (2023)

---

[9] To be precise, the State did not rely on, for example, the search-incident-to-arrest exception, plain view, consent-to-search, community caretaking, third-party intervention, nor any other doctrinal exceptions. We therefore do not comment on whether any of them would justify the warrantless search of the backpack. See DeVesa v. Dorsey, 134 N.J. 420, 428 (1993) (disfavoring advisory opinions).

13

(noting the "inherent mobility" rationale, as well as two other doctrinal justifications).

Specifically, "under our State Constitution, 'when the police have probable cause to believe that [a] vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous,' law enforcement may search the vehicle without first obtaining a warrant" pursuant to the automobile exception. Id. at 319-20 (alteration in original) (quoting State v. Witt, 223 N.J. 409, 447 (2015)). Our Supreme Court delineated the automobile exception at length in Witt, 223 N.J. at 421-39, 447-50, and thereafter amplified the spontaneity requirement in State v. Smart, 253 N.J. 156, 172-73(2023).

The parties have argued at length about whether the automobile exception's two probable cause requirements of unforeseeability and spontaneity are met here. The trial court found those requirements were proven. Defendant espouses multiple reasons to overturn that conclusion, and the State counters them in response.

Without detailing those arguments here, there is a simpler predicate that must not be overlooked. The police's search of the backpack was not performed as part of a search of an automobile. In fact, the Toyota was not searched by the

officers at the scene. The backpack was not removed from the Toyota by the officers. Rather, it was removed by the former passenger before any police interaction. She was standing on the street when Officer Sams encountered her. She dropped the backpack on the ground. The officer picked up the backpack from the ground and placed it in the squad car, where he opened it without a warrant. The gun was not the fruit of an automobile search.

The mobility of the automobile has little bearing upon the present setting. The analysis of whether the police had the authority to immediately open her backpack would be the same whether it was taken out of a car, a school, a church, or some other location. Making these observations, we do not question our case law applying the automobile exception to enable warrantless searches of the contents of a parked vehicle. See State v. Martin, 87 N.J. 561 (1981).

We recognize that police—when they do undertake the search of the interior of a motor vehicle—may justifiably remove objects they find within the vehicle in order to view them with adequate lighting and space. It may be impractical to see and to touch the objects from awkward positions within the vehicle or to inspect them on a dark night with flashlights. But that is not what happened here.

No precedent in our state has extended the automobile exception to the warrantless searches of objects the police have not found in or removed from the automobile.[10] We also discern no policy imperative to do so, because other constitutional exceptions not asserted here may justify the search of a former occupant of a vehicle or that former occupant's belongings.

In short, the automobile exception is inapplicable to the backpack search in the circumstances presented.

2.

We turn to the State's alternative reliance on the exigent circumstances exception to the warrant requirement.

"Exigent circumstances may excuse the need for the police to obtain a warrant." State v. Miranda, 253 N.J. 461, 480 (2023). Under the exception, police may perform "a warrantless search when officers have an 'objectively reasonable basis to believe that prompt action is needed to meet an imminent danger.'" Ibid. (quoting State v. Hemenway, 239 N.J. 111, 126 (2019)); see also State v. Johnson, 193 N.J. 528, 553 (2008) (explaining that "exigent

---

[10] The State's brief cites an out-of-state opinion in State v. Barrow, 989 N.W.2d 682, 688 (Minn. 2023). We decline to rely on that opinion, which involved distinguishable facts. In Barrow, the police searched the defendant's purse, which she was not carrying but instead was seen by police within the vehicle's interior at the time of the stop. Id. at 684.

circumstances will be present when inaction due to the time needed to obtain a warrant will create a substantial likelihood that the police or members of the public will be exposed to physical danger or that evidence will be destroyed or removed from the scene").

The "preeminent determinants of exigency" are "[p]olice safety and the preservation of evidence." Miranda, 253 N.J. at 480. Generally, to invoke the exception, the State "must prove by a preponderance of the evidence that (1) the search was premised on probable cause and (2) law enforcement acted in an objectively reasonable manner to meet an exigency that did not permit time to secure a warrant." Ibid.

"Similar to probable cause, the term 'exigent circumstances' is, by design, inexact. It is incapable of precise definition because, by its nature, the term takes on form and shape dependent on the facts of any given case." Ibid. (internal quotation marks omitted). "The determination whether exigent circumstances existed at the time of the disputed search 'is fact-sensitive' and requires the court to assess 'the totality of the circumstances.'" Id. at 481 (quoting State in Int. of J.A., 233 N.J. 432, 448 (2018)).

For the purposes of our analysis, we will assume—without deciding—that the police were authorized to handcuff the former passenger and place her in the

back seat of Officer Sams' squad car while defendant was believed to be lurking nearby in the neighborhood and, as the BOLO reported, possibly armed.

Given that assumption, we focus on whether sufficient exigent circumstances were present to open the former passenger's backpack without a warrant while it was secured in the front of the locked squad car and separated from her and from defendant. We conclude there were not.

At the moment the police chose to search inside of the backpack, there was no realistic possibility that the former passenger nor defendant could have grabbed it, opened it, and retrieved the gun. The former passenger was in the back seat of the squad car with her hands cuffed behind her back. The backpack was in the front seat and out of her reach, separated by a plexiglass barrier. The former passenger cooperatively divulged to Officer Sams that she thought defendant had put a weapon inside the backpack. If she intended to somehow retrieve the gun herself or wanted defendant to somehow gain access to it if he returned, she would not have volunteered that information. The officer even thanked her for telling him about the weapon. Her cooperation was manifest.

The backpack by that point was plainly in the control of the police. Once they learned from the former passenger that it contained a weapon, and then secured the backpack, the police should have applied for a warrant, allowing the

backpack to be searched.  They did not do so.  Instead, they decided to open the backpack immediately.

As we noted above and underscore here, the State has not argued the police had consent to open the backpack, and has not addressed the consent-to-search factors applicable under case law.  See State v. King, 44 N.J. 346, 352 (1965) (enumerating various consent factors).  The State relies solely on the exigent circumstances exception if the automobile exception fails.

The State has the constitutional burden to prove exigency by a preponderance of the evidence, having invoked that exception.  Miranda, 253 N.J. at 480.  It has not met that burden.  The State has failed to demonstrate that "inaction due to the time needed to obtain a warrant [would] create a substantial likelihood that the police or members of the public will be exposed to physical danger or that evidence will be destroyed or removed from the scene."  Johnson, 193 N.J. at 553.  As in Miranda, there was "no realistic basis for concern" that if the officers paused to contact a judge and requested a warrant, defendant would be in a position to retrieve his weapon from the squad car pending the judge's issuance of that warrant.  253 N.J. at 482.

The disputed element of probable cause need not be resolved to reach that conclusion.  We recognize the State contends the police had probable cause to

believe that the backpack contained a weapon upon hearing the former passenger's utterance, whereas defendant argues that her statement was the fruit of an illegal arrest and cannot be used to support probable cause. It is not essential for us to adjudicate the legality or alleged illegality of the officers' treatment of the former passenger and their restrictions on her movements. Regardless of whether untainted probable cause to open the container existed, the second crucial element of the exigency exception—i.e., the urgent need to conduct a search of a container without obtaining a warrant—has not been shown.

We therefore conclude the exigent circumstances doctrine did not justify the immediate opening of the seized backpack. Because neither of the two exceptions to the warrant requirement relied upon by the State have been proven, we reverse the trial court's order denying suppression of the gun taken out of the backpack and any other fruits of that warrantless search.[11]

---

[11] We must make clear that we appreciate the public and officer safety concerns highlighted by the State and the trial court. In that regard, we do not invalidate the police's authority to have seized the backpack after encountering the former passenger and learning from her that it likely contained a weapon. Our conclusion hinges upon the warrantless immediate search of the backpack's contents, not its confiscation from the former passenger.

Having reversed the trial court's suppression ruling, we accordingly vacate the judgment of conviction, without prejudice, and remand for further proceedings.

**[At the direction of the court, the published version of this opinion omits Part III concerning sentencing issues.]**

### III.

To the extent we have not addressed other arguments that defendant has raised on appeal, they are either unnecessary to our analysis for the reasons stated above or without sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(2).

Reversed on the suppression issue and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2084-23