703 A.2d 954

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. BRIAN K. SMITH, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JAMES N. THOMPSON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 8, 1997—Decided December 8, 1997.

372

Before Judges HAVEY, NEWMAN and COLLESTER.

*Vincent W. Basile* argued the cause for appellant Brian Smith (*Flood & Basile*, attorneys; *Mr. Basile* on the brief).

*Brian J. Neary* argued the cause for appellant James Thompson (*Law Offices of Brian J. Neary*, attorneys; *Mr. Neary*, of counsel and on the brief; *Yung–MI Lee* on the brief).

*Christine M. D'Elia* argued the cause for respondent (*Peter Verniero*, Attorney General, attorney; *Ms. D'Elia*, of counsel and on the brief).

The opinion of the court was delivered by

COLLESTER, J.S.C. (temporarily assigned).

In these appeals, consolidated for purposes of this opinion, defendants urge the following arguments on appeal:

I. The trial court erred in denying the motion for discovery under *State v. Kennedy*.

II. The trial court erred in denying the defendants' motion to suppress physical evidence and statements.

III. The trial court should have enforced the original plea offer.

IV. The plea allocution provided insufficient notice as to the consequences of their pleas.

At 9:15 in the evening of January 14, 1994 Brian Smith and James Thompson, passenger and driver, were stopped on Interstate 95 for alleged motor vehicle violations by New Jersey State Trooper Brian Long, a seven and one half year veteran of the New Jersey State Police. A search of their motor vehicle resulted in their arrest and subsequent indictment for first degree possession of five ounces or more of cocaine with the intent to distribute and third degree possession of cocaine.

Pursuant to a plea agreement both men entered pleas of guilty to the first degree charge with a sentence recommendation by the prosecutor of ten years incarceration with three and one-third years of parole ineligibility. The prosecutor conditioned his joint plea offer on criminal histories disclosing no prior indictable convictions for either defendant, and the offer was withdrawn as to both defendants when it was discovered that Thompson had a prior Pennsylvania conviction for possession of marijuana with the intent to distribute.

Defendants moved to suppress evidence of the search and alleged post-arrest statements. They also contended that the motor vehicle stop was selective enforcement based on race and out of state residence, and they sought discovery of numerous documents from the New Jersey State Police to support the claim. The motion court denied both the discovery request and the motion to suppress.

Defendants entered into a new plea agreement and pled guilty to the first degree charge with the higher sentence recommendations by the prosecutor of eighteen years incarceration and six years of parole ineligibility for Thompson and fourteen years with a four year eight month parole ineligibility term for Smith. Prior to sentencing both defendants moved to withdraw their guilty pleas and compel specific performance of the original plea offer, but the sentencing judge denied the motion and sentenced each defendant to the maximum permitted by the plea agreement.

I.

Defendants base their discovery demand on *State v. Kennedy*, 247 *N.J.Super.* 21, 588 *A.*2d 834 (App.Div.1991) in which two African–American men were stopped for speeding on Interstate 80 in a vehicle with Ohio license plates and a subsequent search resulted in drug charges. The defendants sought discovery of State Police documents to buttress their argument that their arrests were tainted by a systematic practice of discrimination against minorities reflected in the selective enforcement of traffic laws by New Jersey State Troopers. A supporting study by the Warren County Public Defender's Office indicated that its case-load statistics over eight months showed representation of seventy-six percent Caucasians and seventeen percent Afro–Americans but that in the forty-three cases involving motor vehicle stops on Route 80 over a three year period seventy percent involved Afro–Americans and twenty-three percent Caucasians. Stating that the defendants have the burden of producing "some evidence" tending to show the existence of selective enforcement by the State Police, this court held as follows:

> [W]e find that the Public Defender's statistical survey was marginally sufficient to raise a colorable claim of selective enforcement. At the very least, the data contained in the study took "the question past the frivolous state and raised a reasonable doubt" as to whether the State Police are enforcing the traffic laws in an evenhanded fashion without regard to non-germane racial criteria.
>
> *Kennedy, supra,* at 33 [588 A.2d 834] (quoting *United States v. Hazel,* 696 F.2d 473, 475 (6th Cir.1983)).

■ The supporting statistical data presented by defendant in this case consists of logs of the Teaneck Municipal Court for the three year period from July 11, 1991 to August 24, 1994 indicating forty-eight defendants charged by Trooper Long as a result of motor vehicle stops. The public defender represented thirty-three defendants, twenty-four of whom were Afro–American with only four Caucasians. No information was provided as to the race of the fifteen defendants not represented by the public defender.

The defendants also submitted a report by Joseph Naus, a Rutgers professor of statistics, commissioned by the Office of the

Public Defender indicating that from December 6 to December 12, 1988 between 9 a.m. and 4:15 p.m. five percent of the cars between exits eight and twelve on the New Jersey Turnpike contained black motorists in vehicles with out-of-state licenses plates. Also submitted were several newspaper articles quoting former State Troopers to the effect that the New Jersey State Police used profiles in effecting motor vehicle stops.

Defendants' evidence is less satisfactory than was deemed "marginally sufficient" in *Kennedy*. The newspaper articles are obvious and unreliable hearsay. The Naus report is a survey completed six years prior to this arrest conducted during daytime hours on a portion of the Turnpike a considerable distance from the arrest site in this case. The municipal court logs show a relatively modest total number of arrests following car stops by one trooper over four years reduced to an even smaller number of public defender clients.

■ *Kennedy* underscored that the validity of statistical information claimed to show selective enforcement by race depends upon an accurate identification of the group of persons who violate the traffic laws on trooper-patrolled roads. *State v. Kennedy, supra*, at 33, 588 *A*.2d 834. Similarly, in *United States v. Armstrong*, the United States Supreme Court held that to obtain discovery with an allegation of selective prosecution a defendant must make "a credible showing of different treatment of similarly situated persons." *United States v. Armstrong*, 517 *U.S.* 456, 470, 116 *S.Ct.* 1480, 1489, 134 *L.Ed.*2d 687, 702 (1996). However in the instant case there is no evidence that defines the group of persons who violate traffic laws or specifies the disparate treatment of persons who could have been but were not stopped for traffic violations by the State Police.

■ At best, the evidence proffered relates to defendants' belief that Trooper Long had a hidden agenda and profiled Afro-American citizens driving out-of-state vehicles by making traffic stops a pretext to arrest and search. However, the constitutionality of a search and seizure is determined by whether the actions

taken are objectively reasonable and supported by probable cause and not whether an individual police officer has underlying motives. *United States v. Sokolow,* 490 *U.S.* 1, 10, 109 *S.Ct.* 1581, 1587, 104 *L.Ed.*2d 1, 12 (1989). "[T]he Fourth Amendment proscribes unreasonable actions, not improper thoughts." *State v. Bruzzese,* 94 *N.J.* 210, 219, 463 *A.*2d 320 (1983), *cert. denied,* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984).

■ The discovery sought herein is permitted only when there is a colorable claim that a police agency has an officially sanctioned or *de facto* policy of selective enforcement against minorities. *Kennedy, supra,* at 29–30, 588 *A.*2d 834. The alleged motives of an individual police officer are not enough. *See, Pembaur v. City of Cincinnati,* 475 *U.S.* 469, 479, 106 *S.Ct.* 1292, 1298–99, 89 *L.Ed.*2d 452, 462–63 (1986). Therefore, we concur with the motion judge that defendants did not produce sufficient evidence to raise a colorable claim of selective enforcement and affirm the order denying the requested discovery.

## II.

Defendants contend that the motion court erred in denying their motion to suppress evidence seized and statements taken. At the suppression hearing Trooper Long testified that at about 9:15 p.m. on January 14, 1994, he was driving his marked state police car in the southbound express lane of Route 95 in Teaneck when he noticed a 1988 Nissan Maxima with Pennsylvania license plates straddling the left and right lanes. He followed the Maxima for about a mile, saw at least six instances when it veered lanes from right to left, and stopped the vehicle by activating his overhead lights.

Smith was the driver, and Thompson was in the front passenger seat. Trooper Long testified that he approached the car from the passenger side and saw a plastic bag protruding from Thompson's right front pocket which appeared to contain marijuana. He also smelled the odor of alcohol in the car. He requested driving

credentials from Smith, who produced his license and a Pennsylvania registration with a woman's name.

Trooper Long asked Smith to step to the rear of the car and told Thompson to keep his hands on the dashboard. While talking to Smith, the Trooper saw Thompson move his hands from the dashboard and out of view. He immediately went to the passenger side of the Maxima and saw two packages wrapped in silver duct tape between Thompson's legs.

The Trooper ordered Thompson out, conducted a brief pat down search and entered the car to pick up and feel the two packages. Suspecting the packages contained cocaine, Trooper Long arrested and handcuffed Thompson and seized the suspected marijuana from his right front pocket. He also arrested and handcuffed Smith. After being advised of their *Miranda* rights, the defendants allegedly told Trooper Long that they had purchased approximately eight ounces of cocaine at Madison Square Garden in New York for $3,500 with the intention of selling it for profit. Later at the State Police station defendants were charged with violation of controlled dangerous substance laws, and Smith was issued summonses for failure to maintain his lane and driving with a suspended license.

Defendants gave a different version of the events leading to the stop and search. Thompson testified that the Maxima, which belonged to his girlfriend's mother, did not swerve on the highway. He said that the two bags wrapped in duct tape were found by the trooper under the passenger seat and denied any knowledge of their location or contents. He also denied making any incriminating statements.

Smith testified that he and Thompson had travelled to New York City to get clothes and cassette tapes. He said he got lost and was eventually directed out of New York by two cab drivers. He denied erratic driving as well as any knowledge of either the cocaine found in the car or the marijuana claimed to be found on Thompson. He also flatly contradicted Trooper Long's testimony of his admissions to purchasing or possessing cocaine.

The motion judge specifically found that Trooper Long was a credible witness and indicated disbelief of the testimony of both defendants. In our view there was sufficient credible proof in the record to support those conclusions. *State v. Johnson,* 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964).

It is firmly established that a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense. *Delaware v. Prouse,* 440 *U.S.* 648, 663, 99 *S.Ct.* 1391, 1401, 59 *L.Ed.*2d 660, 673 (1979); *State v. Murphy,* 238 *N.J.Super.* 546, 554, 570 *A.*2d 451 (App.Div.1990). Trooper Long saw defendant's vehicle weaving in and out of its lane and thereby had a reasonable basis to stop the Maxima and detain the driver for a credentials check. *State v. Allan,* 283 *N.J.Super.* 622, 626–27, 662 *A.*2d 1038 (Law Div.1995). Once the vehicle was stopped, Trooper Long was permitted to request Smith to exit the vehicle for the purpose of investigation of the suspected traffic violation. *Pennsylvania v. Mimms,* 434 *U.S.* 106, 111, 98 *S.Ct.* 330, 333, 54 *L.Ed.*2d 331, 337 (1977).

Trooper Long's direction to Thompson to keep his hands on the dashboard while Smith was being questioned outside the car was a valid measure to protect the trooper's safety, especially in light of his strong suspicion of narcotics in the car. *State v. Otero,* 245 *N.J.Super.* 83, 92, 584 *A.*2d 260 (App.Div.1990). The fact that Thompson disobeyed the instruction by removing his hands from the dashboard coupled with the Trooper's prior observations of suspected contraband supports an objective finding that Trooper Long properly exercised heightened caution in ordering Thompson from the vehicle. *State v. Smith,* 134 *N.J.* 599, 618, 637 *A.*2d 158 (1994); *State v. Conquest,* 243 *N.J.Super.* 528, 531–33, 580 *A.*2d 740 (App.Div.1990).

The search and seizure of the duct-taped parcels between Thompson's legs is sustainable under the plain view doctrine. Trooper Long's vantage point was lawful for his observa-

tions, *State v. Boynton*, 297 *N.J.Super.* 382, 393–94, 688 *A.*2d 145 (App.Div.1997), *certif. denied*, 149 *N.J.* 410, 694 *A.*2d 195 (1997), and his training and experience led him to the reasonable belief that the packages in plain view contained drugs. *State v. Demeter*, 124 *N.J.* 374, 381–82, 590 *A.*2d 1179 (1991); *State v. Pierce*, 190 *N.J.Super.* 408, 415, 463 *A.*2d 977 (App.Div.1983). Moreover, there was probable cause to arrest Thompson for the suspected contraband on his person, and the scope of permissible search incident to the arrest includes the passenger area of the motor vehicle. *New York v. Belton*, 453 *U.S.* 454, 460, 101 *S.Ct.* 2860, 2864, 69 *L.Ed.*2d 768, 775 (1981).

Furthermore, under the "automobile exception" to the warrant requirement, a warrantless search is valid when there is a probable cause to believe that it contains contraband or evidence of a crime, *Carroll v. United States*, 267 *U.S.* 132, 158–59, 45 *S.Ct.* 280, 287, 69 *L.Ed.* 543, 554 (1925); *State v. Martin*, 87 *N.J.* 561, 567, 436 *A.*2d 96 (1981). Trooper Long's observations of the suspected marijuana along with Thompson's furtive movements were sufficient to constitute probable cause to search every part of the vehicle and its contents that could conceal contraband or evidence of a crime. *United States v. Ross*, 456 *U.S.* 798, 825, 102 *S.Ct.* 2157, 2173, 72 *L.Ed.*2d 572, 594 (1982); *State v. Paturzzio*, 292 *N.J.Super.* 542, 549–50, 679 *A.*2d 199 (App.Div.1996). Accordingly, we affirm the denial of the motion to suppress both the evidence seized and the admission made by defendants.

### III.

Defendants also contend that the court erred in not enforcing the original plea agreement in which the prosecutor recommended the imposition of a ten year sentence with a three and one-third period of parole ineligibility for both defendants. At the plea hearing for each defendant, the prosecutor placed on the record that the State's plea agreement was based upon the sentencing court's acceptance of the plea of both defendants as well as a criminal history report showing no prior indictable

convictions. Each defendant also signed and initialed a plea form indicating that the plea was based on no prior convictions and contingent on the plea of the co-defendant.

Following the discovery that Thompson had a prior indictable conviction for possession of a controlled dangerous substance with the intent to distribute in Pennsylvania, the State withdrew Thompson's plea offer. Moreover, because the plea agreements of the defendants were offered jointly and tied together, the State also withdrew its plea offer to Smith, whose criminal history indicated a Pennsylvania conviction for a drug offense apparently the equivalent of a disorderly persons offense.

The defendants again entered guilty pleas to the first degree charge of possession over five ounces of cocaine with the intent to distribute, but this time the pleas were entered pursuant to a different plea offer by the State. The recommendation for Smith was incarceration for fourteen years with a four year and eight month period of parole ineligibility. As to Thompson, the State agreed to waive any application for an extended term of imprisonment under *N.J.S.A.* 2C:43–6(f) and *N.J.S.A.* 2C:43–7 and recommended a sentence of eighteen years' imprisonment with a six year period of parole ineligibility. Thereafter, both defendants moved to withdraw their guilty pleas, but the court denied the motions and proceeded to impose sentence in accordance with plea recommendations of the prosecutor. Defendants appeal contending that the court's refusal to sentence in accord with the limits of the initial plea agreement was erroneous. We disagree.

It is clear from the record that the initial plea offers were tied together and dependent upon criminal histories free of prior indictable convictions. Plea agreements contingent upon joint pleas of co-defendants are commonplace and based to some degree upon the prosecutor's evaluation of tactical decisions and proofs at trial. Moreover, making the plea offer based on verification of criminal histories is appropriate and prudent.

A plea agreement is based on the "mutuality of advantage" it affords to both the State and defendant. *State v. Taylor,* 80 *N.J.* 353, 361, 403 *A.2d* 889 (1979); *State v. Williams,* 277 *N.J.Super.* 40, 46, 648 *A.2d* 1148 (App.Div.1994). It requires a meeting of the minds upon the negotiated pleas and is an executory agreement since it depends on the approval of the sentencing court. *Mabry v. Johnson,* 467 *U.S.* 504, 508–10, 104 *S.Ct.* 2543, 2546, 81 *L.Ed.2d* 437, 444 (1984); *State v. Thomas,* 61 *N.J.* 314, 321–22, 294 *A.2d* 57 (1972); *State v. Howard,* 110 *N.J.* 113, 122, 539 *A.2d* 1203 (1988). In proper circumstances the State may withdraw its agreement after the defendant has accepted. *Mabry, supra,* 467 *U.S.* at 510, 104 *S.Ct.* at 2548; *State v. Chappee,* 211 *N.J.Super.* 321, 331, 511 *A.2d* 1197 (App.Div.) *certif. denied,* 107 *N.J.* 45, 526 *A.2d* 135, 136 (1986); *State v. Antieri,* 186 *N.J.Super.* 20, 25, 451 *A.2d* 189 (App.Div.), *certif. denied,* 91 *N.J.* 546, 453 *A.2d* 864 (1982).

In this instance the assistant prosecutor clearly stated that the condition of the plea offer to both defendants was that neither had a prior indictable conviction. There was no entitlement to the plea agreement as to either defendant prior to the prosecutor's withdrawal of the plea offer, and there was no error in the denial of specific performance by the sentencing court. *See, Antieri, supra,* 186 *N.J.Super.* at 25, 451 *A.2d* 189.

## IV.

We also find no merit in defendants' contention that the court's plea allocution was insufficient because they were not told that their potential maximum sentence and parole eligibility were greater than the plea agreement accepted by the sentencing court. Both were apprised that they were subject to a maximum sentence of twenty years absent the plea agreement, and Thompson was told that he was eligible for an extended term of imprisonment in lieu of the prosecutor's waiver in the plea bargain.

While the sentencing court did not spell out the mandatory minimum parole disqualifier for a first degree offense, the assis-

tant prosecutor stated in open court the State's recommendation for a parole disqualifier for four years and eight months on a fourteen year sentence for Smith and six years for Thompson on an eighteen year sentence. Both defendants acknowledged prior to their pleas that they heard and understood the prosecutor's recommendation. Moreover, they not only signed the plea forms but specifically filled in the maximum and minimum period of parole ineligibility to which they were subject.

We find that the defendants' reasonable expectations under the plea agreement were realized. *State v. McQuaid*, 147 *N.J.* 464, 487–88, 688 *A.*2d 584 (1997). Accordingly, there was no error in the denial of motions to withdraw the guilty pleas.

Affirmed.