**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5067-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NATALY Y. TICONA-GOMEZ,

    Defendant-Appellant.

_____

> Argued May 9, 2019 – Decided July 10, 2019
>
> Before Judges Simonelli, Whipple and Firko.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 17-10-1408.
>
> Ramon M. Gonzalez argued the cause for appellant.
>
> William P. Miller, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Dennis Calo, Acting Bergen County Prosecutor, attorney; William P. Miller, of counsel and on the brief; John J. Scaliti, Legal Assistant, on the brief).

PER CURIAM

Following the denial of her motion to suppress, defendant Nataly Y. Ticona-Gomez entered a conditional guilty plea to fourth-degree operating a motor vehicle during a period of suspension for a second or subsequent violation of N.J.S.A. 39:4-50 or N.J.S.A. 39:4-50.4(a), N.J.S.A. 2C:40-26(b).  On appeal, defendant contends the police violated State v. Donis, 157 N.J. 44 (1998), by illegally accessing personal information during a mobile data terminal (MDT) random license plate check on the vehicle she was driving.  We disagree and affirm.

I.

A.

A police officer must have "an articulable and reasonable suspicion that [a] driver has committed a motor vehicle offense" before the officer may stop the vehicle.  State v. Locurto, 157 N.J. 463, 470 (1999) (quoting State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997)).  However, a police officer need not observe a motor vehicle violation before using a MDT to conduct a random license plate check.  Donis, 157 N.J. at 54.  On the contrary, our Supreme Court has held that, "because MDT checks are not traditional searches subject to Fourth Amendment restrictions, they can be 'random,' that is, not based on

reasonable suspicion, and thus need not be governed by predetermined objective criteria."  State v. Segars, 172 N.J. 481, 490 (2002).

Although Donis "eliminated traditional constitutional concerns relevant to the basic motor vehicle information, [the Court] invoked provisions of the Right to Know Law, N.J.S.A. 39:2-3.3 and 39:2-3.4, to insulate 'the personal information' of motorists."  Id. at 491 (quoting Donis, 157 N.J. at 55-56). N.J.S.A. 39:2-3.4(a) prohibits the disclosure of "personal information about any individual obtained by the [New Jersey Division of Motor Vehicles (DMV)] in connection with a motor vehicle record."  "Personal information" is defined as "information that identifies an individual, including an individual's photograph; social security number; driver identification number; name; address other than the five-digit zip code; telephone number; and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status."  N.J.S.A. 39:2-3.3 (emphasis added).  The Court recognized that "[i]n enacting Sections 3.3 and 3.4, the Legislature balanced the State's goals to maintain highway safety by ensuring that only qualified drivers operate safe motor vehicles, by protecting law enforcement officers in fulfilling their duties and by protecting motorists from unnecessary disclosure of their personal information."  Donis, 157 N.J. at 55.

3

"To best balance [the Legislature's] concerns," the Court imposed a two-step process for a MDT random license plate check:

> In the first step, the initial random license plate look-up would display information regarding only the registration status of the vehicle, the license status of the registered owner, and whether the vehicle has been reported stolen. The registered owner's personal information would not be displayed. If the original inquiry disclosed a basis for further police action, then the police officer would proceed to the second step, which would allow access to the "personal information" of the registered owner, including name, address, social security number, and if available, criminal record.
>
> [Ibid.]

Under the two-step process, "police officers who were using MDTs at random and who lacked suspicion could access only non-private information." Id. at 56. "[I]f the initial MDT inquiry disclosed that the car was unregistered, reported stolen or that [the] registered owner was not properly licensed, that information would then justify the police officer accessing the 'personal information' from the MDT." Ibid.

At the time the Court decided Donis, a MDT had access to the database of the DMV, but not the criminal history information of the National Crime Information Center (NCIC) or the State Crime Information Center databases. Id. at 47. The information accessible on a MDT included the vehicle's

A-5067-17T3

registration status, the registered owner's driver's license status, and whether the vehicle had been reported stolen. Ibid.

A MDT now uses the Info Cop database, which has access to the databases of the DMV, NCIC, and the Judiciary's Automated Traffic System (ATS). A MDT also has access to the e-Ticket database, which provides information regarding whether anyone who drove the vehicle was issued a motor vehicle summons and, if so, displays the type and date of the offense and the individual's driver's license number.

B.

Lieutenant Dennis Ring of the Edgewater Police Department testified at the suppression hearing that he conducts fifty to three hundred random license plate checks during an eight hour shift to ensure the vehicles he observed are not stolen, are properly registered, and the operators' driver's licenses are not suspended or revoked. At approximately 5:30 p.m. on July 24, 2017, Ring observed a female driving a black Nissan Altima northbound on River Road. He entered the vehicle's license plate number into his MDT and "hit the random button" (step one). Step one displayed DMV information showing the Nissan was properly registered and the registered owner, Juan C. Ticona-Chaupis, had a valid driver's license and no active warrants and NCIC information showing

5

there were "no hits" on the registered owner. Step one also displayed e-Ticket information showing that less than two months prior, on May 12, 2017, a female driver of the vehicle was issued summonses for driving while intoxicated (DWI), N.J.S.A. 39:4-50; refusal to consent to taking of samples of breath, N.J.S.A. 39:4-50.2; and driving while license suspended, N.J.S.A. 39:3-40. The female's driver's license number was highlighted and underlined, indicating a hyperlink to another screen.

Ring explained that because the motor vehicle violations were recent and serious in nature and having observed that the driver of the Nissan was female, he decided to further investigate to ensure the driver was properly allowed to operate a vehicle and was not wanted by law enforcement. He clicked on the hyperlink, which connected him to a screen that displayed personal information about the female, including her photograph, hair and eye color, social security number, and address, and information regarding a protective order and additional summonses (step two).

Step two also showed that the female's driver's license was suspended. Upon seeing this, Ring turned his patrol vehicle around, "pulled alongside the [Nissan,]" saw that "the photo[graph] . . . matched the . . . driver that was operating the vehicle northbound on River Road[,]" and then "[c]onducted a

motor vehicle stop."[1]  The driver, later identified as defendant, gave Ring her passport, which confirmed her identity.  She admitted she was recently convicted of DWI and her driver's license was suspended for two years because this was her second DWI conviction.  Ring contacted police headquarters, confirmed this information, and placed defendant under arrest.

Ring issued defendant summonses for driving while license suspended, N.J.S.A. 39:3-40, and failing to possess a driver's license, N.J.S.A. 39:3-29.  A grand jury indicted defendant for fourth-degree operating a motor vehicle during a period of suspension for a second or subsequent violation of N.J.S.A. 39:4-50 or N.J.S.A. 39:4-50.4(a), N.J.S.A. 2C:40-26(b).  On her motion to dismiss, defendant argued that Donis limits MDT random license plate checks to information about the vehicle's registration status, the owner's driver's license status, and whether the vehicle had been reported stolen.  Defendant posited that because step one of Ring's MDT check revealed the Nissan was properly registered, the registered owner had a valid driver's license, and the vehicle was not reported stolen, Ring violated Donis by not terminating the search.

---

[1]  Contrary to defendant's argument on appeal, Ring's police report did not state the stop occurred before he identified defendant from the photograph.  The report merely stated that Ring was "concerned [there] may be a criminal offense associated with driving the car [and] conducted a motor vehicle stop in the area of the Edgewater [C]ommons parking lot."

A-5067-17T3

In denying the motion, the motion judge found Ring's testimony credible and determined he did not violate step one of <u>Donis</u> because the e-Ticket information showing the three summonses recently issued to defendant was not personal information. The judge also found Ring had a reasonable and articulable suspicion justifying his further inquiry based on his observation of a female driving the Nissan and knowledge that a female received a recent summons for driving without a license. The judge further found Ring had a reasonable and articulable suspicion that a motor vehicle violation was being committed when he saw that the description of the female produced by the MDT check matched defendant. Thus, the judge ruled the stop was lawful.

Following defendant's guilty plea, the judge imposed a mandatory 180-day jail term and the appropriate fines and penalties and suspended defendant's driver's license for twenty-four months concurrent to her previous suspension. This appeal followed. In a July 25, 2018 order, we stayed the jail term pending appeal.

II.

Our review of a trial court's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). As our Supreme Court has held:

> Appellate review of a motion judge's factual findings in
> a suppression hearing is highly deferential. We are

> obliged to uphold the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings. Those factual findings are entitled to deference because the motion judge, unlike an appellate court, has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy."
>
> [State v. Gonzales, 227 N.J. 77, 101 (2016) (citations omitted) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).]

"A disagreement with how the motion judge weighed the evidence . . . is not a sufficient basis for an appellate court to substitute its own factual findings to decide the matter." State v. Elders, 192 N.J. 224, 245 (2007). We will "reverse only when the trial court's determination is 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting Elders, 192 N.J. at 244). However, we owe no deference to the trial court's legal conclusions or interpretations of the legal consequences flowing from established facts, and review questions of law de novo. State v. Watts, 223 N.J. 503, 516 (2015). Applying the above standards, we discern no reason to reverse.

Defendant argues that Donis constitutionally limits the disclosure of information in step one to the vehicle's registration status, the registered owner's driver's license status, and whether the vehicle has been reported stolen.

Defendant posits that once Ring obtained this information and saw nothing improper, the search was over and he was prohibited from engaging the hyperlink to obtain her personal information. Defendant concludes Ring violated her constitutional rights by accessing e-Ticket information not approved of in step one of Donis.

Defendant's constitutional argument is misplaced. The holding in Donis rested on statutory grounds, not constitutional grounds. See Donis, 157 N.J. at 60 (Stein, J., concurring) (noting the Court's opinion treated the legality of police officers' random use of MDTs primarily as an issue of statutory interpretation); see also State v. Sloane, 193 N.J. 423, 436 n.2 (2008) (noting the Donis Court based its decision on New Jersey's Right to Know Law). Thus, even if Ring ran afoul of Donis, this did not constitute a constitutional violation.

We also disagree that Donis limits the disclosure of information in step one to the vehicle's registration status, the registered owner's driver's license status, and whether the vehicle has been reported stolen. Computer technology has advanced since the Court decided Donis over twenty years ago, and the police now have access to more information during step one. Although not specifically approved of in Donis, in State v. Diloreto, 180 N.J. 264, 277 (2004), the Court found nothing improper about police access to NCIC information

10

during a step one MDT check, which revealed information about the vehicle's last user and his identifying information. In <u>State v. Coviello</u>, No. A-3904-09 (App. Div. Oct. 8, 2010) (slip op. at 5), we found nothing improper about police access to warrant information during a step one MDT check. We find no reason that the police should not have access to e-Ticket information during step one, as this information would assist them in maintaining highway safety by ensuring that only qualified drivers operate motor vehicles. <u>See</u> <u>Donis</u>, 157 N.J. 55.

In any event, <u>Donis</u> prohibits the police from accessing "personal information" in step one. E-Ticket information about a driver's motor vehicle violations and driving status is not personal information barred from disclosure. <u>See</u> N.J.S.A. 39:2-3.3 (Personal information "does not include information on . . . driving violations, and driver's status."). Notably, defendant did not address this issue. Thus, Ring did not violate <u>Donis</u> by accessing e-Ticket information in step one about defendant's motor vehicle violations and driving status and using that information to engage the hyperlink and obtain her personal information in step two.

Further, Ring had a basis for further police action when he discovered that a female driver of the Nissan had recently been issued a summons for driving while license suspended and observed a female driving the Nissan. Thus, he had

11

probable cause to proceed to step two and obtain defendant's personal information.

Lastly, "[t]he New Jersey Supreme Court has determined that license plate checks followed by motor vehicle stops based on reasonable suspicion that the driver's license is suspended are constitutionally permissible in light of the interests at stake." State v. Pitcher, 379 N.J. Super. 308, 314 (App. Div. 2005). In Pitcher, we held that:

> Because a motor vehicle stop based upon a reasonable suspicion that the driver's license is suspended is permissible, the only question we must address is whether the officer's suspicion was reasonable. Specifically, we must consider whether the facts available to the officer "at the moment of the seizure," were sufficient to cause a person of reasonable caution to believe that defendant was driving without a license. To establish reasonable suspicion, "the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the suspicion.
>
> [Id. at 315 (citations omitted) (quoting State v. Pineiro, 181 N.J. 13, 21 (2004)).]

Further, a stop of a motor vehicle is justified when a police officer "has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense." Locurto, 157 N.J. 463, 470 (1999) (quoting Smith, 306 N.J. Super. at 380).

Based on the facts available to him, Ring had an articulable and reasonable suspicion that the driver's license of the female he observed driving the Nissan was suspended and she committed the motor vehicle offense of driving while license suspended. Accordingly, the motor vehicle stop was lawful.

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We affirm defendant's conviction, vacate the July 25, 2018 order staying the mandatory 180-day jail term, and remand this matter to the trial court for imposition of sentence.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-5067-17T3