**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1555-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JEROME GRIFFIN,

     Defendant-Appellant.

_____

Argued December 8, 2020 – Decided August 13, 2021

Before Judges Yannotti and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-12-1852.

Kevin Walker, First Assistant Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin Walker, of counsel and on the briefs).

Nancy A. Hulett, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Nancy A. Hulett, of counsel and on the brief).

PER CURIAM

Defendant pled guilty to third-degree possession of a controlled dangerous substance (CDS), specifically heroin, contrary to N.J.S.A. 2C:35-10(a)(1). He appeals from the judgment of conviction (JOC) dated October 25, 2018 and challenges the denial of his motion to suppress. We reverse and remand for further proceedings.

I.

In December 2016, a Middlesex County grand jury charged defendant with third-degree possession of a CDS (heroin), N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession of a CDS (heroin), with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (count two); and third-degree possession of a CDS (cocaine), N.J.S.A. 2C:35-10(a)(1) (count three). Co-defendant Michal Alegre was charged with third-degree possession of a CDS (heroin), N.J.S.A. 2C:35-10(a)(1) (count four).

Defendant filed a motion to suppress evidence obtained in a search of his motor vehicle, and the judge conducted an evidentiary hearing on the motion. At the hearing, Officer Demetrius Katsoulis of the North Brunswick Police Department (NBPD) testified for the State. He stated that he has been an officer in the NBPD since 2006. He said that on September 7, 2016, he was on routine

patrol in North Brunswick and observed a 2011 Dodge Avenger with a rear license plate, on which the words "Garden State" were "completely" covered.

Katsoulis stated that the vehicle was being operated in violation of N.J.S.A. 39:3-33, which provides, in pertinent part, that "[n]o person shall drive a motor vehicle which has a license plate frame or identification marker holder that conceals or otherwise obscures any part of any marking imprinted upon the vehicle's registration plate . . . ." The officer activated his emergency lights and initiated a traffic stop of the car.

Katsoulis exited his patrol vehicle and approached the car from the driver's side. He observed a male driver, a male in the front passenger seat, and a female passenger in the rear seat. The officer told the driver why he had stopped the vehicle, and asked him for his driver's license, vehicle registration, and proof of insurance. As he was doing so, Katsoulis noticed that the female passenger was not wearing a seatbelt, which is a violation of N.J.S.A. 39:3-76.2.

Co-defendant Alegre was the female passenger and defendant was the front seat passenger. Defendant told the officer he was the owner of the car. Defendant provided the officer with the vehicle's registration and proof of insurance.

A-1555-18

Katsoulis stated that when he approached the vehicle, the driver was "shaking" and "very nervous." He said the driver was sweating profusely, even though the temperature that day was about seventy-nine or eighty degrees. Katsoulis noticed that the driver had red injection marks on the inside of his forearms.

According to Katsoulis, the injection marks were bleeding slightly, and it appeared as if they were recent "injection points" from a needle used to inject a drug, such as heroin. He asked the driver to exit the car so he could have a conversation with him that the other passengers could not hear.

Katsoulis asked the driver why he was sweating, if there was any contraband such as heroin in the car, and if he uses heroin. The driver admitted he had been using heroin. Initially, the driver said the heroin was not in the vehicle, but he "changed his story" and stated that he did not know if there was any contraband in the car. Katsoulis asked the driver to sit by the side of the road and called for assistance.

Katsoulis entered information he had obtained from defendant and Alegre into his vehicle's computer. He learned that Alegre had several outstanding warrants. He asked her to exit the vehicle. He saw that she also had fresh injection marks on her arms, some of which were still bleeding. He also

4

observed "a neatly folded wad of money with a rubber band in [defendant's] hat" on the car's dashboard. Katsoulis arrested Alegre and asked defendant to exit the car and hold the leash for her dog, which had been in the back seat of the car.

Katsoulis asked defendant if he would consent to a search of the vehicle. He testified that he made that request based on the totality of the circumstances, including the driver's admitted use of heroin, the money he observed, as well as the nervousness and inconsistencies in the passengers' statements.

Katsoulis read defendant the Middlesex County Law Enforcement Consent to Search Form. According to Katsoulis, at that time, defendant was not in custody or handcuffed. Defendant signed the form and stood near the driver, while Katsoulis searched the vehicle.

In the rear of the vehicle, Katsoulis found a small cloth duffel bag with draw strings. Defendant told the officer it was his bag. Inside the bag, Katsoulis found a brown glass vial with a black screw cap, which contained a white powdery residue. The officer also found a Brillo pad, a Zippo lighter, lighter fluid, a glass ashtray with powdery residue, and a small bag containing baking soda. He testified that the items all indicated someone had been heating a CDS.

A-1555-18

Katsoulis placed defendant under arrest for possession of drug paraphernalia. The officer patted defendant down and secured him in the patrol vehicle. The officer issued summonses to the driver for violations of N.J.S.A. 39:3-33 and N.J.S.A. 39:3-74.[1] He told the driver he was free to leave with the car and the dog.

Officers then transported defendant and Alegre to the NBPD's headquarters. Katsoulis then searched defendant. In defendant's front pockets, he found 166 folds of heroin, 2.72 grams of raw heroin, and $967 in United States currency.

On cross examination, defense counsel questioned Katsoulis about the vehicle's license plate. Katsoulis stated that the plate was partially obstructed, but he acknowledged he could see the markings on the plate including the vehicle's registration number. He said that only the words "Garden State" were "completely" obstructed. He also acknowledged that he did not see any drug paraphernalia in plain sight when he approached the vehicle.

---

[1] The officer said he issued a summons for violation of N.J.S.A. 39:3-74 because an air freshener was hanging from the vehicle's rear-view window. The statute provides in part that no person shall drive any vehicle equipped or loaded with certain materials that "unduly interfere with the driver's vision to the front and to the sides." N.J.S.A. 39:3-74.

The judge issued a written opinion and order denying defendant's motion to suppress. The judge found that Katsoulis had reasonable suspicion to effectuate the motor vehicle stop because he had observed the motor vehicle violations, specifically, the partially obstructed rear license plate and item hanging from the rear-view mirror which obstructed the driver's vision.

The judge also found that since two of the vehicle's occupants appeared to have recently injected themselves with a CDS, the officer had the necessary degree of reasonable suspicion to seek defendant's consent to search the vehicle. The judge concluded that the officer lawfully searched the vehicle and arrested defendant and conducted a valid search incident to the arrest.

In June 2018, defendant pled guilty to count one of the indictment pursuant to a plea agreement with the State. The judge dismissed counts two and three. Thereafter, the judge sentenced defendant to probation for three years, conditioned on defendant serving 364 days in the county jail.

The judge also imposed various monetary penalties, required defendant to submit to random urine monitoring as recommended by probation, and suspended defendant's driver's license for six months. The judge filed the JOC dated October 25, 2018. This appeal followed.

On appeal, defendant raises the following arguments for our consideration:

> POINT I
> THE PATROLMAN DID NOT HAVE A REASONABLE AND ARTICULABLE SUSPICION TO JUSTIFY A MOTOR VEHICLE STOP, PURSUANT TO DELAWARE [v.] PROUSE, 440 U.S. 648, 668 (1979), BECAUSE THE WORDS "GARDEN STATE" WERE NOT COVERED ON THE CAR'S LICENSE PLATE.
>
> POINT II
> THE PATROLMAN DID NOT ARTICULATE SPECIFIC REASONS TO SUPPORT AN ORDER TO THE PASSENGERS TO ALIGHT FROM A VEHICLE STOPPED FOR A TRAFFIC VIOLATION, PURSUANT TO [STATE [v.] SMITH], 134 N.J. 599 (1994).
>
> POINT III
> THE RECORD DOES NOT SUPPORT A FINDING THAT THE PATROLMAN HAD A REASONABLE AND ARTICULABLE SUSPICION TO REQUEST THE DEFENDANT'S CONSENT TO SEARCH THE VEHICLE, PURSUANT TO [STATE [v.] CARTY], 170 N.J. 632 (2002). THEREFORE, ALL THE EVIDENCE SEIZED SHOULD BE SUPPRESSED.

II.

We first consider defendant's contention that the officer did not have a reasonable and articulable suspicion to stop his car. He contends the officer did

8

not have a basis to stop the vehicle for violating N.J.S.A. 39:3-33 because the markings on the rear license plate were not obstructed.

"When an appellate court reviews a trial court's decision on a motion to suppress, the reviewing court defers to the trial court's factual findings, upholding them 'so long as sufficient credible evidence in the record supports those findings.'" In Interest of J.A., 233 N.J. 432, 445 (2018) (quoting State v. Gonzalez, 227 N.J. 77, 101 (2016)). An appellate court should defer "to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Id. at 252 (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Therefore, we review the trial court's legal determinations de novo. State v. Evans, 235 N.J. 125, 133 (2018).

Here, defendant contends that the motor vehicle stop was invalid. "[A] police officer is justified in stopping a motor vehicle when [there is] an articulable and reasonable suspicion that the driver has committed a motor

vehicle offense." State v. Locurto, 157 N.J. 463, 470 (1999) (quoting State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997)) (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)). "The totality of the circumstances must be considered in evaluating whether an officer had a reasonable suspicion to conduct a brief investigatory stop." State v. Pineiro, 181 N.J. 13, 22 (2004) (citing State v. Davis, 104 N.J. 490, 504 (1986)).

"The '[r]easonable suspicion necessary to justify an investigatory stop is a lower standard than the probable cause necessary to sustain an arrest.'" State v. Golotta, 178 N.J. 205, 213 (2003) (quoting State v. Stovall, 170 N.J. 346, 356 (2002)). The standard requires "some minimal level of objective justification for making the stop." State v. Nishina, 175 N.J. 502, 511 (2003) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

The State has the burden to prove that an investigatory stop is valid. State v. Atwood, 232 N.J. 433, 444 (2018). "[T]he State is not required to prove that the suspected motor-vehicle violation occurred." Locurto, 157 N.J. at 470 (citing State v. Williamson, 138 N.J. 302, 304 (1994)).

Defendant argues that there was insufficient evidence to support the judge's finding that the rear license plate on the vehicle was partially obstructed. He contends the dash cam video of the motor vehicle stop shows the words

"Garden State" were not, in fact, concealed or obscured. Defendant further argues that even if the markings on the plate were obscured, this did not constitute a violation of N.J.S.A. 39:3-33. The State contends that even if the officer erred in his interpretation of the law, the officer had reasonable suspicion to stop the vehicle.

III.

While this appeal was pending, the Supreme Court issued its opinion in State v. Carter and State v. Roman-Rosado, _ N.J. _ (2021). In the Carter case, police officers stopped Carter's vehicle for a suspected violation of N.J.S.A. 39:3-33 because the words "Garden State" were covered on the car's license plate. Id. at _ (slip op. at 6). Carter had been driving without a valid license and the police learned he had two outstanding warrants. Ibid. The officers arrested Carter and found he was in possession of a CDS. Ibid.

Carter was charged with fourth-degree tampering with evidence, in violation of N.J.S.A. 2C:28-6(1), and four drug-related offenses. Ibid. He moved to suppress the evidence obtained in the search of the car. Ibid. The trial court denied the motion, finding the officer had reasonable suspicion Carter was operating his vehicle in violation of N.J.S.A. 39:3-33 because the words "Garden State" on the license plate were covered. Id. at _ (slip op. at 7).

11

The trial court found that N.J.S.A. 39:3-33 barred the concealment of any markings on a license plate. Ibid. Carter thereafter pled guilty to one of the drug offenses and a charge in an unrelated indictment. Ibid. Carter appealed from the judgment of conviction and argued that the trial court erred by denying the motion to suppress. Ibid. This court affirmed his conviction finding that N.J.S.A. 39:3-33 barred even the partial concealment of any marking on the license plate, including the words "Garden State." Id. at _ (slip op. at 7-8).

In the Roman-Rosado case, police officers stopped the car that Roman-Rosado had been driving for a suspected violation of N.J.S.A. 39:3-33. Id. at (slip op. at 8). The officer said the words "Garden State" on the rear license plate were partially covered. Ibid. The officer indicated that the license plate frame covered about ten or fifteen percent of the bottom of the letters on the plate, but he could clearly recognize the words "Garden State." Ibid.

Roman-Rosado did not have a valid driver's license, and the police learned that he had two outstanding arrest warrants. Id. at _ (slip op. at 8-9). The police arrested Roman-Rosado and thereafter observed a wrapped object in the car, which was found to be an unloaded handgun. Id. at _ (slip op. at 9). Roman-Rosado was charged with second-degree unlawful possession of a handgun, in violation of N.J.S.A. 2C:39-5(b). Ibid.

12                                                          A-1555-18

He moved to suppress the evidence obtained in the motor vehicle stop. Ibid. The trial court found that there were minimal obstructions of the words "Garden State" on the license plate and the officer could readily determine the vehicle's registration. Id. at __ (slip op. at 9-10). The court nevertheless found that N.J.S.A. 39:3-33 barred any objection of the markings on the plate. Id. at (slip op. at 10). The court found the stop was justified and denied the motion to suppress. Ibid.

Roman-Rosado pled guilty to second-degree possession of a weapon by a person not permitted to do so, in violation of N.J.S.A. 2C:39-7(b)(1). Ibid. This court reversed the judgment of conviction, concluding that N.J.S.A. 39:3-33 bars the concealment of identifying information on license plates, specifically "critical identifying information" on the plate. Id. at __ (slip op. at 10-11) (quoting State v. Roman-Rosado, 462 N.J. Super. 183, 199 (App. Div. 2020)). This court stated that a slight or insignificant covering of the words "Garden State" on the plate was not a violation of the statute. Id. at __ (slip op. at 11) (citing Roman-Rosado, 462 N.J. Super. at 199).

The Supreme Court granted certification in both cases. Id. at __ (slip op. at 12). The Court held a broad interpretation of N.J.S.A. 39:3-33 would raise

"serious constitutional concerns." Id. at _ (slip op. at 26).  The  Court stated that the statute

> requires that all markings on a license plate be legible or identifiable.  That interpretation is consistent with the plain meaning of the statute's wording.  If a license plate frame or holder conceals or obscures a marking such that a person cannot reasonably identify or discern the imprinted information, the driver would be in violation of the law.  See Roman-Rosado, 462 N.J. Super. at 199; see also [State ex rel.] D.K., 360 N.J. Super. [49, 53 App. Div. (2003)] (noting in dicta that the term "obscure" in section 33 means to make a license plate "less legible").
>
> In other words, a frame cannot cover any of the plate's features to the point that a person cannot reasonably identify a marking.  So, for example, if even a part of a single registration letter or number on a license plate is covered and not legible, the statute would apply because each of those characters is a separate marking.  If "Garden State," "New Jersey," or some other phrase is covered to the point that the phrase cannot be identified, the law would likewise apply.  But if those phrases were partly covered yet still recognizable, there would be no violation.
>
> [Id. at _ (slip op. at 29).]

The  Court  held  that  Roman-Rosado  did  not  violate  N.J.S.A.  39:3-33 because only ten or fifteen percent of the words "Garden State" were obstructed, and the officer "conceded he could clearly identify the phrase on the license plate."  Id. at _ (slip op. at 30).  The Court found, however, that the officer had

the right to stop Carter because it was undisputed that the words "Garden State" were entirely covered. Ibid. The plate violated the statute. Ibid.

The Court also addressed the State's contention that even if Roman-Rosado did not violate N.J.S.A. 39:3-33 and the officer's interpretation of the statute was mistaken, the mistake was reasonable and the stop lawful. Id. at (slip op. at 34). The Court refused to adopt the holding of the Supreme Court of the United States in Heien v. North Carolina, 574 U.S. 54 (2014). Id. at _ (slip op. at 34-46).

In Heien, the Court held that a police officer's mistake of law can provide reasonable suspicion needed to justify a traffic stop under the Fourth Amendment. Id. at _ (slip op. at 34) (citing Heien, 574 U.S. at 57). Our Supreme Court declined to adopt a reasonable mistake of law exception under the New Jersey Constitution. Id. at _ (slip op. at 46). The Court explained:

> An officer's reasonable but mistaken interpretation of a statute cannot change the fact that the law does not criminalize particular conduct. In other words, if a law does not establish an offense altogether, the reasonable nature of an officer's mistake cannot transform an officer's error into reasonable suspicion that a crime has been committed. If officers could search and seize a person under those circumstances, reasonable, good faith errors would erode individual rights that the State Constitution guarantees.
>
> [Id. at _ (slip op. at 44).]

IV.

After the Supreme Court issued its opinion in <u>Carter</u>, the State and defendant filed letters pursuant to <u>Rule</u> 2:6-11(d) concerning the application of <u>Carter</u> to this case.   In its letter, the State argues that, under <u>Carter</u>, the stop was constitutional.    The State points out that the officer had testified that the words "Garden State were completely covered by the license plate cover, and the dash cam video shows an obstruction of more than ten to fifteen percent of those words.  The State therefore argues that the evidence supports the judge's finding that the words "Garden State" were partially covered, which is a violation of N.J.S.A. 39:3-33.

In response, defendant argues that the stop was not valid because, according to defendant, the dash cam video shows that while a portion of the markings on the plate is covered, a person could reasonably identify the words "Garden State." Defendant asserts that the video does not support the officer's testimony that the words "Garden State" were completely covered.  He therefore contends the vehicle was not be operated in violation of N.J.S.A. 39:3-33, as interpreted in <u>Carter</u>.

We are convinced that the order denying defendant's motion to suppress should be reversed and the matter remanded the matter to the trial court for

16

reconsideration of its decision upholding the motor vehicle stop. As noted, the trial court found that the stop was lawful based on the officer's observed violations of the motor vehicle law, specifically the partially concealed license plate and the item hanging from the rearview mirror that allegedly obstructed the driver's vision.

When the trial court made its decision regarding the license plate, it did not have the benefit of the Supreme Court's interpretation of N.J.S.A. 39:3-33, as set forth in Carter. There is a factual issue as to the extent the words "Garden State" on the license plate were obscured. On remand, the trial court should again review the officer's testimony, as well as the dash cam video of the stop and determine whether defendant's vehicle was being operated in violation of N.J.S.A. 39:3-33, as interpreted in Carter.

Moreover, the trial court should reconsider and provide more detailed findings of fact with regard to its determination that the vehicle stop also was justified by the alleged violation of N.J.S.A. 39:3-74, based on the presence of an air freshener hanging in the rearview mirror. The trial court should specifically address whether the air freshener "unduly interfere[d] with the driver's vision to the front and to the sides." N.J.S.A. 39:3-74.

We note that at the suppression hearing, the officer testified that he stopped defendant's vehicle based on his observation of the alleged violation of N.J.S.A. 39:3-33. The officer did not state that he stopped the vehicle for an alleged violation of N.J.S.A. 39:3-74. We also note that on appeal, the State did not argue that the alleged violation of N.J.S.A. 39:3-74 justified the stop.

If the trial court determines that defendant's car was not being driven in violation of N.J.S.A. 39:3-33, as interpreted by the Supreme Court in Carter, or N.J.S.A. 39:3-74, the court need not consider whether the officer's mistaken interpretation of either statute justified the stop. As noted, in Carter, the Court declined to adopt the reasonable mistake of law exception under the New Jersey Constitution. Carter, _ N.J. at _ (slip op. at 46).

In view of our decision to remand the matter for further proceedings on defendant's motion to suppress, we will not address the arguments raised in Point II and III of defendant's appellate brief at this time. Defendant may renew those arguments on appeal in the event the trial court reaffirms the denial of his motion to suppress in the remand proceedings.

Reversed and remanded to the trial court for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1555-18