**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1252-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRISTOPHER CARRIGAN,
a/k/a EDWARD SMITH,
CHRIS CARRIGAN, MICHAEL
T. MARTIN, CHRISTOPH
CARRIGAN, and MICHAEL
WORSHETA,

    Defendant-Appellant.

_____

> Argued July 27, 2021 – Decided August 10, 2021
>
> Before Judges Sumners and Firko.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 19-05-0657.
>
> Stefan Van Jura, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Stefan Van Jura, of counsel and on the brief).

Monica do Outeiro, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Lori Linskey, Acting Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

After the trial court denied his motion to suppress, defendant Christopher Carrigan pled guilty to a second violation of fourth-degree operating a motor vehicle during a period of license suspension, N.J.S.A. 2C:40-26(b), as well as to a motor vehicle violation of driving while suspended, N.J.S.A. 39:3-40. Defendant was sentenced to eighteen months in prison subject to nine months of parole ineligibility and a six-month license suspension for the fourth-degree offense, concurrent to a ten-day county jail sentence for the motor vehicle offense. He was also given a six-month license suspension for the motor vehicle violation that was consecutive to any suspension that he was serving. Through counsel, defendant appeals the denial of his motion to suppress and his conviction contending:

> THE CONVICTION FOR OPERATING A MOTOR VEHICLE DURING A PERIOD OF LICENSE SUSPENSION SHOULD BE REVERSED BECAUSE THE ONLY EVIDENCE OF THAT OFFENSE – THE STOP ITSELF – WAS UNLAWFULLY OBTAINED FOLLOWING A SEARCH OF PRIVATE

2

INFORMATION WITHOUT REASONABLE SUSPICION OF WRONGDOING. U.S. CONST. AMEND. IV; N.J. CONST. ART. 1, [¶] 7.

In a pro se supplemental brief, defendant contends:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S SUPPRESSION MOTION BY IGNORING THE PRINCIP[LE]S AND MANDATE OF STATE V. DONIS.[1]

POINT II

THE SENTENCE IMPOSE[D] BELOW ON THE N.J.S.A. 39:3-40 OFFENSE WAS ILLEGAL AND MUST BE VACATED AND THE MOTOR VEHICLE SUMMONS ISSUED[,] DISMISSED.

Having considered these contentions in light of the record and applicable law, we affirm the convictions but remand for amendment of the Judgment of Conviction (JOC) to merge the convictions.

I

On January 23, 2019, Neptune City Police Officer Christopher Devlin pulled behind a green Jeep Cherokee (the vehicle) driven by an "elderly white male with glasses" stopped at a traffic light and decided to conduct a "random

---

[1] 157 N.J. 44 (1998).

inquiry on the [Jeep's] license plate" on his mobile data terminal (MDT). After inputting the license plate number into a search query box on the Spillman software[2], Devlin entered a database, "Involvements," which documents a motor vehicle's interactions by police officers from municipalities using the system. Devlin did not recall the particular "Involvements" he clicked on, but in seeking information regarding the vehicle, the system revealed a photograph of a male and the male's driving history. The history indicated that the male had been issued a citation in July 2018 for driving with a suspended license.

Based on the date and other "driving-while-suspended[]" citations listed in Spillman, Devlin believed the male driver still had a suspended license. Devlin determined that the male operating the vehicle was the same person depicted in the Spillman photo. Devlin then pulled over the vehicle and learned that defendant was the person referenced in Spillman. Defendant admitted that his driver's license was suspended and that he had an open can of beer in the

---

[2] Spillman synthesizes information from a variety of law enforcement and public record resources and provides remote access to data on MDTs. It includes records from computer-aided dispatch reports; police, fire, and emergency medical services; National Crime Information Center Data (NCIC); Automated Traffic System; Records Management System; Jail Management System; and Department of Motor Vehicle (DMV) or Division of Motor Vehicle Commission (MVC).

A-1252-19

vehicle. Devlin issued him summonses for driving while suspended, being an unlicensed driver, and possession of an open container of alcohol in a vehicle.

According to Devlin, the entire Spillman search took between thirty and sixty seconds. Devlin acknowledged that he did not observe any motor vehicle violations by defendant, and that he had no reason to pull over defendant's vehicle until he saw the information in Spillman pertaining to defendant's license suspension.

After defendant was indicted for fourth-degree operating a motor vehicle during a period of license suspension, he moved to suppress the vehicle stop, claiming a violation of his rights under the Fourth Amendment and New Jersey Constitution, Article 1, paragraph 7, because Devlin used private information with no reasonable suspicion of wrongdoing to initiate the vehicle stop. The trial judge denied the motion, reasoning that based on Donis and State v. Sloane, 193 N.J. 423 (2008), "defendant . . . [did] not have . . . a reasonable expectation of privacy in the information" from Spillman, and the stop of the vehicle was legal.

Following the denial of his suppression motion, defendant entered an open plea of guilty to fourth-degree operating a motor vehicle during a period of license suspension and to the motor vehicle violation of driving while

A-1252-19

suspended.  As noted, defendant was sentenced to concurrent jail sentences of eighteen months and ten days, respectively, together with a six-month license suspension consecutive to any suspension that he was serving.

II

Defendant reiterates the arguments rejected by the trial judge.  He argues that based on <u>Donis</u> and <u>Sloane</u>, Devlin violated his privacy rights by not having "reasonable suspicion" to access Spillman to obtain his driving history information.[3]  He contends Devlin's initial MDT search did not reveal that the vehicle's owner had a suspended driver's license, nor was there any other information to cause Devlin to continue his search.  Therefore, Devlin should not have extended his search into the database to seek more information related to the vehicle, and the subsequent stop and inquiry should have been suppressed.  We disagree.

A trial judge's evidentiary rulings are accorded deference, absent a showing of an abuse of discretion.  <u>State v. Nantambu</u>, 221 N.J. 390, 402 (2015) (quoting <u>State v. Harris</u>, 209 N.J. 431, 439 (2012)).  Thus, our review of a trial judge's decision on a motion to suppress is limited.  <u>State v. Robinson</u>, 200 N.J.

---

[3]  Defendant's contentions in his supplemental brief are similar to those raised in his counsel's merits brief.

A-1252-19

1, 15 (2009). In reviewing a motion to suppress evidence, we must uphold the judge's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)). We review de novo the judge's pure determinations of law, State v. Mann, 203 N.J. 328, 337 (2010) (citation omitted), as well as the application of legal principles to such factual findings, State v. Harris, 181 N.J. 391, 416 (2004) (citation omitted).

A police officer must have "an articulable and reasonable suspicion that [a] driver has committed a motor vehicle offense" before the officer may stop the vehicle. State v. Locurto, 157 N.J. 463, 470 (1999) (quoting State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997)). Donis, however, held that a police officer need not observe a motor vehicle violation before using an MDT to conduct a random license plate check. 157 N.J. at 54. "MDT checks are not [viewed as] traditional searches subject to Fourth Amendment restrictions, they can be 'random,' that is, not based on reasonable suspicion, and thus need not be governed by predetermined objective criteria." State v. Segars, 172 N.J. 481, 490 (2002) (citing Donis, 157 N.J. at 48, 54-55).

Although Donis "eliminated traditional constitutional concerns relevant to the basic motor vehicle information, . . . [the Court] invoked provisions of the

7

Right to Know Law, N.J.S.A. 39:2-3.3 and 39:2-3.4, to insulate 'the personal information' of motorists." Id. at 491 (quoting Donis, 157 N.J. at 55-56). N.J.S.A. 39:2-3.4(a) prohibits the disclosure of "personal information about any individual obtained by the [MVC] in connection with a motor vehicle record." "Personal information" is defined as "information that identifies an individual, including an individual's photograph; social security number; driver identification number; name; address other than the five-digit zip code; telephone number; and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." N.J.S.A. 39:2-3.3. The Court recognized that "[i]n enacting Sections 3.3 and 3.4, the Legislature balanced the State's goals to maintain highway safety by ensuring that only qualified drivers operate safe motor vehicles, by protecting law enforcement officers in fulfilling their duties and by protecting motorists from unnecessary disclosure of their personal information." Donis, 157 N.J. at 55.

"To best balance [the Legislature's] concerns," the Court imposed a two-step process for an MDT random license plate check:

> In the first step, the initial random license plate look-up would display information regarding only the registration status of the vehicle, the license status of the registered owner, and whether the vehicle has been

A-1252-19

reported stolen. The registered owner's personal information would not be displayed. If the original inquiry disclosed a basis for further police action, then the police officer would proceed to the second step, which would allow access to the "personal information" of the registered owner, including name, address, social security number, and if available, criminal record.

[Ibid.]

Under the two-step process, "police officers who were using MDTs at random and who lacked suspicion could access only non-private information." Id. at 56. "[I]f the initial MDT inquiry disclosed that the car was unregistered, reported stolen or that [the] registered owner was not properly licensed, that information would then justify the police officer accessing the 'personal information' from the MDT." Ibid.

When Donis was decided, an MDT had access to the DMV database, but not the criminal history information of the NCIC or the State Crime Information Center databases. Id. at 47. The information accessible on an MDT included the vehicle's registration status, the registered owner's driver's license status, and whether the vehicle had been reported stolen. Ibid.

Approximately nine years after its ruling in Donis, the Court held in Sloane that police may perform NCIC checks on the driver and passengers of an automobile during a valid traffic stop "so long as it does not unreasonably extend

A-1252-19

the time of the stop." 193 N.J. at 436-38. The Court concluded that an NCIC check, which includes information regarding outstanding warrants, was "not a search under the federal or state constitutions." Id. at 436. In support, the Court emphasized that it "previously stated in Doe v. Poritz, 142 N.J. 1, 28 n. 8 (1995), a person 'has no reasonable expectation of privacy in his fingerprints, photograph or matters of public record.'" Id. at 435.

Applying the principles set forth in Donis and Sloane to the undisputed facts regarding the stop of defendant's vehicle,[4] we discern no basis to disturb the trial judge's orders denying defendant's motion to suppress the stop. In thoroughly detailing the State's evidence, the trial judge acknowledged that Spillman synthesizes information from a variety of law enforcement and public records resources and provides remote access to the data on an MDT, some of which was not available when Donis was decided.

Defendant's conviction for suspending his driver's license was public record. He therefore had no reasonable expectation of privacy in that information; hence, Devlin's acquisition of it through an MDT should not be suppressed. Upon learning through the Spillman database that a male driver of

---

[4] Defendant's merits brief states that he "accepts the trial court's findings of fact."

A-1252-19

the vehicle, whose photo resembled defendant, had a suspended license, Devlin had a reasonable suspicion to stop defendant to confirm whether he had a suspended driver's license. See State v. Carty, 170 N.J. 632, 639-40 (2002) (holding that in investigatory stops of a motor vehicle, if police have a reasonable and articulable suspicion that violations of motor vehicle or other laws have been or are being committed, the stop is legitimate); State v. Stovall, 170 N.J. 346, 357 (2002) ("'The principal components of a determination of reasonable suspicion . . . [are] the events which occurred leading up to the stop . . . , and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to a reasonable suspicion . . . .'") (alterations in original) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)).

The trial judge correctly applied Donis and Sloane in deciding that Devlin obtained reliable public information that defendant's license was suspended to formulate Devlin's decision to stop defendant's vehicle. Defendant's federal and state constitutional rights were not violated.

III

In his supplemental pro se argument, defendant argues that his sentences for fourth-degree operating a motor vehicle during a period of license

11

suspension and motor vehicle violation of driving while suspended violate the federal and state constitutional protections against double jeopardy. Defendant asserts that he "cannot lawfully be re-sentenced under the enhancement provisions of N.J.S.A. 39:3-40 [(f)](2)[] because of the N.J.S.A. 2C:40-26[(b)] conviction, [and he] submits that the conviction for violation of N.J.S.A. 39:3-40 must be reversed and the summons issued dismissed." Defendant cites no law to support his argument.

Defendant's argument that double jeopardy occurred due to his two convictions lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Nevertheless, the State agreed at oral argument that the convictions should have been merged. See State v. Faison, 452 N.J. Super. 390, 396 (App. Div. 2017) (in the absence of a sentencing transcript, "assum[ing] the judge merged the N.J.S.A. 39:3-40 conviction into the N.J.S.A. 2C:40-26(b) conviction"). The mandatory penalties of the two offenses survives the merger. See State v. Franks, 445 N.J. Super. 98, 109 (App. Div. 2016); State v. Baumann, 340 N.J. Super. 553, 557 (App. Div. 2001). Thus, even though it does not affect the aggregate term of defendant's sentence, we remand for the trial court to amend the JOC to reflect merger of defendant's convictions. See State v. Soto,

12

340 N.J. Super. 47, 69 (App. Div. 2001), disapproved of on other grounds by State v. Dalziel, 182 N.J. 494 (2005).

We affirm the convictions, but remand for amendment of the JOC in accordance with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1252-19